ELLEN L. DUFFEY *vs.* SCHOOL COMMITTEE OF HOPKINTON.

Suffolk.    March 30, 1920. — May 19, 1920.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*School and School Committee,* Superintendency union.    *Words,* "Vacation periods."

The Thanksgiving recess, including the last Thursday of the month of November and the Friday immediately following, was *said* not to be a "vacation" period within the meaning of St. 1914, c. 714, § 2, requiring, before dismissal of a teacher in the public schools, that the teacher shall be given notice by the school committee of its intention "at least thirty days prior to the meeting, exclusive of the customary vacation periods."

Teachers in public schools in towns which compose a superintendency union are protected by the provision of St. 1914, c. 714, § 2, that no teacher within the protection of the statute shall be dismissed "unless . . . the superintendent of schools shall have given to the school committee his recommendations as to the proposed dismissal."

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on December 15, 1919, for a writ of mandamus directing the school committee of the town of Hopkinton to reinstate the petitioner as a teacher in the public schools, from which position she alleged that she had been illegally removed.

The petition was heard by *Carroll, J.* Material facts found by him are described in the opinion. He "ruled that thirty days' notice was given to the petitioner before action was taken by the committee dismissing her." He found that no "recommendation for the petitioner's removal was made by the superintendent of schools," but ruled that no such recommendation was necessary in order to give the school committee power to act, because there was a superintendency union under St. 1914, c. 714, § 7, between the towns of Hopkinton and Ashland; and reported the case to the full court for determination.

St. 1914, c. 714, is as follows:

"Section 1. The school committee of a city or town, in electing a teacher or superintendent who has served in the public schools of its city or town for the three previous consecutive years, shall employ such teacher or superintendent to serve at the discretion of the school committee, subject to the provisions of section two of this act.

"Section 2. The school committee may dismiss any teacher or superintendent from employment by a two thirds vote of the whole committee, and such teacher or superintendent shall not receive any compensation for service rendered after such dismissal: provided, that a teacher or superintendent employed to serve at the discretion of the school committee, as provided in section one of this act, shall not be dismissed unless, at least thirty days prior to the meeting, exclusive of customary vacation periods, at which the committee votes upon the question of his dismissal, he shall have been given notice of the intention of the school committee to vote upon the question of his dismissal, nor unless he shall have been given, upon his request, a statement by the school committee of the reasons for which his dismissal is proposed; nor unless, also, in the case of a teacher, the superintendent of schools shall have given to the school committee his recommendations as to the proposed dismissal.

"Section 3. (1) No teacher employed to serve at the discretion of the school committee, as provided in section one of this act, shall suffer a decrease of salary without his consent, except by a general salary revision affecting equally all teachers of the same salary grade in the city or town. (2) A superintendent employed to serve at the discretion of the school committee shall suffer no

decrease in salary without his consent, until at least one year after the school committee has voted to reduce his salary.

"Section 4.   Nothing herein contained shall be construed as limiting the right of a school committee to suspend a teacher or superintendent for immoral conduct or other conduct unbecoming a teacher; and if the teacher or superintendent so suspended is subsequently dismissed because of such conduct, he shall not receive any salary for the period of his suspension.

"Section 5.   Nothing herein contained shall be construed as limiting the right of a school committee to dismiss a teacher when an actual decrease in the number of pupils in the schools of the city or town renders such action advisable.

"Section 6.   All acts and parts of acts inconsistent herewith are hereby repealed.

"Section 7.   This act shall not apply to superintendents of superintendency unions.

"Section 8.   This act shall not apply to the city of Boston.

"Section 9.   This act shall take effect on the first day of July in the year nineteen hundred and fourteen."

The case was submitted on briefs.

*C. W. Rowley & D. J. Riley,* for the petitioner.

*J. E. Swift,* for the respondents.

RUGG, C. J.   This is a petition for a writ of mandamus brought to secure reinstatement as teacher in the public schools of Hopkinton, a position from which the petitioner alleges that she has been removed wrongfully.

The salient facts are that the petitioner had been a teacher in the high school in Hopkinton since September, 1913, until December, 1919, when she was dismissed by a two thirds vote of the school committee.   She was notified in writing by letter, dated November 1, 1919, of the intention of the school committee to vote on the question of her dismissal at a meeting to be held on December 6, 1919.

This notice was given "at least thirty days prior to the meeting, exclusive of the customary vacation periods" as required by St. 1914, c. 714, § 2.   The customary vacations in Hopkinton as shown by the town reports and by other evidence were at Christmas, Easter and during the summer.   The Thanksgiving recess, including Thursday and Friday of Thanksgiving week,

was not a "vacation" period within the meaning of those words in the statute.

The petitioner was informed, in response to her request, that the reasons for which her dismissal was proposed were "conduct unbecoming a teacher and insubordination." That was a sufficient compliance with the terms of § 2, at least in the absence of demand for more detailed specifications.

The chief question presented is, whether St. 1914, c. 714, is applicable to a town (like Hopkinton) which has joined with another town or towns to form a superintendency union or district. R. L. c. 42, §§ 41, 43, as amended by St. 1912, c. 114, and § 44 as amended by St. 1911, c. 384. The title of said St. 1914, c. 714, is "An Act relative to the tenure of office of teachers and superintendents of public schools." It is provided by § 2 that no teacher within its protection shall be dismissed "unless . . . the superintendent of schools shall have given to the school committee his recommendations as to the proposed dismissal." This provision is broad in its language. It apparently includes all teachers within the Commonwealth, because by R. L. c. 42, § 40, all cities and towns must either employ a superintendent of schools or be within a union or district employing a superintendent of schools. The words of § 7 of that act (see St. 1918, c. 257, § 182, as amended by St. 1919, c. 5) namely, "This act shall not apply to superintendents of superintendency unions," do not exempt teachers within the towns composing such unions or districts. As matter of statutory construction that section and those words mean that the tenure of office, to which the act is devoted, does not apply to such superintendents. They do not imply that the "recommendations as to the proposed dismissal" required by § 2 shall be inoperative as to superintendents of superintendency unions and shall afford no protection to teachers working in schools supervised by such superintendents. The teachers who are subject to the act by § 1 include all teachers. Doubtless the reason why superintendents of superintendency unions are excluded from the operation of that statute is that ample provision is made touching their tenure of office by St. 1911, c. 384.

The history of the legislation confirms the view that the recommendation of the superintendent as to the proposed dismissal is a prerequisite to the dismissal. Absolute power to dismiss

teachers was plainly given to the school committee by R. L. c. 42, § 31. By the following section it was optional with the school committee to elect a teacher to serve at its pleasure instead of electing each year. The radical change wrought by said St. 1914, c. 714, provided a tenure of office for teachers as well as for superintendents except superintendents of school unions already protected in their tenure by St. 1911, c. 384, and protected teachers who have served for the three previous consecutive years from removal (except for causes specified in § 4) unless and until certain essential preliminaries have been observed.

The reason of the act tends in the same direction. It seems just as important to safeguard the tenure of service of teachers in small communities where schools are under a superintendent of a superintendency union as it is in more populous cities and towns. The advice of the superintendent, who may be presumed to possess more than ordinary skill and judgment touching the general competency and usefulness of teachers, may be quite as necessary in order to prevent injustice and to insure the highest possible efficiency of the public schools in the small town as in larger centres.

No recommendation by the superintendent of schools was made as to the proposed dismissal of the petitioner: hence the school committee acted beyond their power in attempting to discharge the petitioner from the service.

The report is treated as presenting only questions of law, since these alone can be decided by the full court. *Boucher* v. *Salem Rebuilding Commission*, 225 Mass. 18. The petition seems to have been denied as matter of law and not in the exercise of discretion, and therefore the petitioner appears to be entitled to prevail.

*Writ to issue.*