OLIVER H. TOOTHAKER *vs.* SCHOOL COMMITTEE OF ROCKLAND.

Plymouth.   May 24, 1926. — June 30, 1926.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*School and School Committee.   Mandamus.*

A petition by a superintendent of schools for a writ of mandamus to require a school committee to reinstate him after his dismissal was referred to an auditor and afterwards was heard by a single justice of this court upon the auditor's report and was denied as a matter of discretion. The petitioner alleged exceptions. From the record, it appeared that on April 28, 1925, the school committee by letter notified the petitioner that on June 17, following, a vote would be taken by the committee on the question of his dismissal. He sent a letter to the committee, which was received on the afternoon of June 16, asking for a statement of their reasons and for a hearing. On the afternoon of June 17, a special meeting was held by two of the members, who favored dismissal, at which, with the assistance of counsel, a statement was drafted which set forth as reasons lack of harmony and of coöperation between the committee and the superintendent and the committee's belief that they could obtain a higher standard of instruction and one more satisfactory

to the town through another superintendent than the petitioner. The third member of the committee was notified by telephone to attend this meeting but was not told that a statement of reasons would be drafted. A meeting of the full committee for hearing the petitioner was held on the evening of June 17 and he with a witness and counsel for the majority of the committee were present. Final action was deferred for good cause until an adjourned meeting held on June 25, when by a majority vote the petitioner was dismissed. The auditor found that there was no good and sufficient reason for the act of dismissal, that the petitioner was capable and qualified for his position, and that under his superintendency the schools of the town had reached a higher level than they had before attained; that, with one of the majority of the committee, the statement of reasons for dismissal was merely a subterfuge to cover personal and political ill will, and with the other there was a feeling of personal ill will and political animosity, he having been elected on the sole issue, whether or not he would seek the dismissal of the petitioner. The petitioner had given an interview to a newspaper in which he spoke disparagingly of the majority of the committee, calling one of them a truck driver and the other a former barnstorming actor. *Held,* that

(1) The notice to the petitioner of the intention of the committee to vote on removal was sufficient;

(2) There was no informality in the meeting on the afternoon of June 17 which affected the formality and propriety of the meeting in the evening and the final action of the committee;

(3) The presence of counsel at the meetings of June 17 and June 25 was not unlawful nor contrary to the provisions of G. L. c. 71, § 42, as amended by St. 1921, c. 293;

(4) The reasons given by the committee were sufficient grounds for removal;

(5) It could not be said as a matter of law that the single justice failed to exercise sound judicial discretion: the exceptions must be overruled.

PETITION, filed in the Supreme Judicial Court for the county of Plymouth on June 27, 1925, for a writ of mandamus to compel the respondents Carroll A. Easton, Patrick J. Ford and Helen M. Hayden, the members of the school committee of the town of Rockland, to reinstate the petitioner as superintendent of schools.

After answer by the respondents, the case was referred to an auditor. Material findings by the auditor were as follows:

The petitioner began work as superintendent of schools of the town of Rockland on September 1, 1921. The respondent Easton was elected to the school committee in March, 1924. During that year he was the only member of the committee who was not satisfied with the petitioner's en-

cumbency.   In the campaign of March, 1925, the respondent Ford contested election with one Kelley, who was favorable to the petitioner.   The common report during the campaign was that the purpose of the respondent Ford in running for election to the school committee was, if elected, to dismiss the petitioner from office as superintendent of schools.   That was the outstanding issue.   The vote for Ford was one thousand five hundred forty-two, and for Kelley, one thousand twenty-nine.

On April 28, 1925, the secretary of the school committee addressed to the petitioner a letter reading as follows: "You are hereby notified that at a meeting of the school committee of the town of Rockland to be held June 17, 1925, a vote will be taken by the school committee on the question of your dismissal as superintendent of the schools of Rockland."   By a letter dated June 15, addressed to the "School Committee of the Town of Rockland" and received by the respondent Easton at 4:20 P.M. on June 16, the petitioner requested that he be given a hearing and furnished with a statement "of your reasons for which you propose to vote on the question of my dismissal."   On the morning of June 17, the respondent Easton called the respondent Hayden, who was favorable to the petitioner, on the telephone, stating to her that the petitioner desired a hearing and that a special meeting of the committee was to be held that afternoon preceding the already scheduled meeting in the evening, and she was requested merely to give her consent to the granting of a hearing.   She did give her consent and did not attend such special meeting and had no knowledge that at that meeting the question of grounds upon which the alleged proposed vote was to be taken was to be determined, and never was consulted on that question.   When she learned of the narration of grounds that evening, she "protested the whole proceeding."

At the special meeting in the afternoon of June 17, the grounds quoted in the opinion were formulated; thereafter the petitioner was notified thereof and that the committee would give him a hearing at 7:30 that evening.   He attended the meeting in the evening with a witness.   There

were present, besides himself and his witness, the entire school committee of three, a stenographer, and counsel who had been requested to attend by the respondents Easton and Ford. At that meeting the respondents Easton and Ford took "the position that grounds for their proposed action were set out in the communication sent to the petitioner, that they had nothing to add to, or detract from, them, and that petitioner should proceed, if he wished, to make such statement as he desired. No limitation in this respect was placed on either the petitioner or his witness." The meeting was adjourned without taking any vote, except that of adjournment to June 25, 1925. That postponement was out of consideration to the petitioner for the reasons that graduation and class day exercises were to occur on the Monday and Tuesday evenings following June 17 and that the petitioner had a part in them.

At the meeting on June 25, 1925, it was voted that the petitioner be dismissed as superintendent, the respondents Easton and Ford voting in the affirmative and the respondent Hayden voting in the negative.

The auditor found that the petitioner "admitted a published interview in the Boston Post in which he made the following characterization of the respondents Easton and Ford: 'One of the members of the board is a truck driver, who to the best of my knowledge has never visited the schools since he was elected fifteen months ago, and the other is a former barnstorming actor who was stranded here in town and got a job as a bookkeeper in a factory'; saying that the above was a statement of fact as he understood it; that he simply answered the questions of the reporter and meant no slur, and that the fact as stated would not interfere with his acceptance of Easton and Ford as his superior officers and working harmoniously with them, so far as he himself was concerned."

The auditor also found as follows: "So far as the evidence presented warrants a finding, I do find that no good and sufficient reason appeared for the act of dismissal. The petitioner has been and is a capable man for the position. Under his administration, and very largely as a result of it,

the public schools of Rockland have reached a higher level than they have before attained, and many improvements relating to the conduct of the schools have been introduced. At the same time I cannot refrain from stating that the petitioner's answers to the queries of the representative of the Boston Post, and the characterization hereinbefore set out of the members of the school committee, were unfortunate and ill advised, even though it may be true that he did not know what use ₀the reporter was to make of his material."

The auditor further found in substance that the respondents Easton and Ford were not qualified by experience or first hand knowledge of the schools to know what constituted the highest standard of education or any standard of education; that it was customary in Rockland and elsewhere and for the best interest of the schools that the superintendent meet with the committee except when his salary, election, or tenure of office were under consideration; that, when the respondents Easton and Ford became the majority of the school committee, the petitioner was notified that his presence at the meetings of the committee was no longer desired and thereafter he did not attend; that the respondents had not attempted in any way to coöperate or work in harmony with the petitioner and had not permitted him to coöperate or work in harmony with them.

As to the attitude of the respondents Easton and Ford toward the petitioner, the auditor found that, so far as Easton was concerned, the allegation of standard of education in the Rockland schools as a ground for voting to dismiss the petitioner was alleged "merely as a subterfuge to cover up personal and political ill will as the real reason for seeking the dismissal of" the petitioner, "and that he was somewhat governed in his action by the more vigorous and dominating personality of respondent Ford. He was also governed to some extent by the idea that he was reflecting the mind of the majority of voters who .went to the polls in the election of March, 1925. That he was somewhat doubtful of the wisdom and justice of this action is shown by his remark at the time the vote of dismissal was taken, June 25, 1925,

that he did not know whether he was right or not in voting in the affirmative. With Mr. Ford, the case was somewhat different. He is a man with considerable force of intellect and has some ideas of educational methods in which he honestly differs with the petitioner. Whether he is right or wrong in these views is beyond my province to say. There was, however, in addition to respondent Ford's honesty of purpose, at bottom, a feeling of personal dislike and political animosity which was reflected in certain remarks on the town meeting floor . . . which naturally followed a heated campaign. There is no reason why the two men should not work together, but the attitude of respondent Ford from the beginning has been that the petitioner should be eliminated."

The case was heard upon the pleadings and the auditor's report by *Wait*, J. He filed a statement of findings and rulings which were as follows:

"The notice of intention to vote on removal was sufficient. The statute does not require that the terms of the vote be stated in the notice. G. L. c. 71, § 42, as amended by St. 1921, c. 293.

"The special meeting of June 16, [*sic*] 1925, was legal. The absent member had notice of the meeting and of the general topic to be dealt with. There is no evidence of any fraudulent concealment of intended action thereat.

"The proceedings of the meeting of June 17, 1925, were valid. Action under the notice could be taken at an adjournment to June 25.

"There was no illegality in the attendance of counsel for the members of the school committee at the session on June 25.

"The vote to dismiss the petitioner was valid. Upon the evidence of the report of the auditor, I am unable to conclude that the action of the members of the committee who voted against the plaintiff's continuance in the office of superintendent was dictated solely by personal ill will or illegitimate political opposition. The votes of the town had no binding or legal effect to control the action of members of the committee; but they could consider in deciding what was for the welfare of the schools the feeling of large numbers of the citizens toward the superintendent.

"The 'hearing' required by G. L. c. 71, § 42, as amended by St. 1921, c. 293, is not a trial to be determined by a finding of fault on the part of the person dismissed. . . .

"I am not satisfied that the reasons set out in the notice of June 16, 1925, were a mere subterfuge, a camouflage for personal hostility, ill will, and political animosity.

"The objection to the hearing before the auditor is not well founded. The case could proceed on the answers of two of the defendants, who constituted a majority of the school committee. It is immaterial whether their counsel could act for the committee as a whole.

"Dealing with the matter as one of discretion, I do not feel that one whose usefulness as a superintendent is so doubtful in view of the circumstances disclosed by the evidence, should be retained in office by this court; even though his ability and willingness to render good service to the schools of Rockland are as great as, from the evidence, I believe them to be, and although his dismissal is so likely to be a cause of regret to the committee and to the town.

"The petition is denied."

The petitioner alleged exceptions.

The case was submitted on briefs.

*J. A. Tirrell,* for the petitioner.

*W. J. Coughlan,* for the respondents.

CROSBY, J. This is a petition for mandamus brought against the respondents, who are members of the school committee of the town of Rockland, to compel them to reinstate the petitioner as superintendent of schools of that town. The case was referred to an auditor, and afterwards was heard before a single justice of this court who as matter of discretion denied the petition. The petitioner presented to the auditor eighty-eight requests for findings of fact, all of which so far as pertinent to the issues involved were dealt with by him. The petitioner also requested the auditor to make twenty-seven rulings of law, which were passed upon except so far as they involved findings of fact. The petitioner excepted to the order of the single justice denying the petition, and to his findings and rulings.

The power given to school committees to dismiss public school teachers and superintendents is found in G. L. c. 71, § 42, as amended by St. 1921, c. 293. The rulings of the single justice, that the notice to the petitioner of the intention of the committee to vote on removal was sufficient, and that the statute does not require that the terms of the vote be stated in the notice, were correct. While one member of the committee did not attend the meeting held on the afternoon of June 17, 1925, it appears that such member was unable to be present but consented to have it called, and that the other two members were present. The meeting held in the evening of June 17 was in compliance with the statute and the proceedings then taken were valid. The adjournment of this meeting to June 25, when final action was taken and by a two-thirds vote the petitioner was dismissed as superintendent, was within the power of the committee under the statute. The appearance of counsel for the majority of the committee at the meeting held on June 25 was not unlawful. It was not contrary to the terms of the statute (§ 42) under which the meeting was held, and might have conduced to the regularity and validity of the action then taken. The reasons given by the committee for the proposed dismissal of the petitioner, as stated in their letter to him dated June 17 were as follows:

"1. For the promotion of the general welfare of the Schools of Rockland. The Superintendent is under the law the executive officer of the School Committee entrusted under the general direction of the Committee with the care and supervision of the public schools. In our opinion the lack of harmony and co-operation between the Committee and Superintendent is detrimental to the welfare of the schools.

"2. As the School Committee has general charge of the public schools, it is our duty to have and maintain the highest possible standard in our school management and affairs, and we believe we can obtain and maintain a higher standard and one more satisfactory to the Town with the assistance of some Superintendent other than yourself."

It is plain from the report of the auditor that friction and ill feeling existed between two members of the committee

and the superintendent.   The cause and responsibility for such conditions need not be considered or determined; it is enough to say that they existed.   The single justice found that the vote to dismiss was valid.   He states that upon the evidence of the report of the auditor he is "unable to conclude that the action of the members of the committee who voted against the plaintiff's continuance in the office of superintendent was dictated solely by personal ill will or illegitimate political opposition . . . .   I am not satisfied that the reasons set out in the notice of June 16 [17], 1925 were a mere subterfuge . . . .   Dealing with the matter as one of discretion, I do not feel that one whose usefulness as a superintendent is so doubtful in view of the circumstances disclosed by the evidence, should be retained in office by this court; even though his ability and willingness to render good service to the schools of Rockland are as great as, from the evidence, I believe them to be, and although his dismissal is so likely to be a cause of regret to the committee and to the town."   The committee in deciding whether a teacher or a superintendent shall be removed are bound to act for the best interests of the town and the welfare of its public schools.   *Corrigan* v. *School Committee of New Bedford,* 250 Mass. 334.

Regardless of the question whether the petitioner or the respondents are responsible for existing conditions, better results can be attained in the conduct of the public schools by harmonious and concerted action between the members of the committee and the superintendent.   "The school committee is an independent body, entrusted by law with broad powers, important duties and large discretion."   *Leonard* v. *School Committee of Springfield,* 241 Mass. 325, 329.

The failure of the single justice to find that the act of the respondents was prompted by personal hostility, ill will or political animosity toward the petitioner distinguishes the case at bar from that of *Sweeney* v. *School Committee of Revere,* 249 Mass. 525.

It is well settled that mandamus is not a writ of right, but is addressed to sound judicial discretion.   *Brattin* v. *Board of Civil Service Commissioners,* 249 Mass. 170, 172.   As we

are unable to say that the single justice failed to exercise such discretion, his decision must stand. No error appears in the rulings of law made by the court, and the exceptions thereto cannot be sustained.

*Exceptions overruled.*
*Order dismissing petition affirmed.*