ELBA SHERBURNE SHELDON *vs.* SCHOOL COMMITTEE OF HOPEDALE.

Worcester.    April 14, 1931. — June 25, 1931.

Present: RUGG, C.J., CARROLL, WAIT, & FIELD, JJ.

*School and School Committee.    Married Woman.    Estoppel.*

If there be compliance with the requirements of G. L. c. 71, § 42, as amended by St. 1921, c. 293, the dismissal of a teacher employed in the public schools of a town at discretion under § 41 rests in the discretion of the school committee exercised in good faith.

It *was stated* that it was not necessary to the validity of such a dismissal that the recommendation to the committee by the superintendent under said § 42, as so amended, favor the dismissal: that statute requires that the committee have the·superintendent's advice, but it is not intended that their action be controlled thereby.

Such power of dismissal in the school committee is not dependent upon its decisions in the cases of other teachers.

The circumstance, that an unmarried female teacher employed at discretion in the public schools of a town married in reliance upon a statement by the superintendent that her marriage would not affect her position and that he thought married teachers the best and would be glad to keep her on, did not prevent the school committee subsequently, acting in good faith and in compliance with G. L. c. 71, § 42, as amended by St. 1921, c. 293, from dismissing her on the ground that her marriage conflicted with a policy, adopted by the committee after her marriage, to eliminate married female teachers from the teaching force of the schools; especially as it did not appear that her contemplation of marriage was made known to the committee.

Such policy of eliminating married female teachers from the schools was not as a matter of law so irrational that it was inconsistent with good faith on the part of the committee in dismissing the teacher.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Worcester on November 28, 1930, and described in the opinion.

The case was heard by *Sanderson,* J. Material facts are stated in the opinion. The single justice ordered the petition dismissed. The petitioner alleged exceptions.

*A. B. Cenedella,* (*H. A. Barbadoro* with him,) for the petitioner.

*J. T. Noonan,* (*E. C. Storrow, Jr.,* with him,) for the respondents.

WAIT, J. This is a petition for mandamus to compel the respondent, the school committee of the town of Hopedale, to reinstate the petitioner as a teacher in the public schools of the town.

The following facts are agreed. The petitioner, then unmarried, was duly elected by the school committee of Hopedale on July 12, 1922, as a grade school teacher. She was duly reëlected in the three years following and, by virtue of G. L. c. 71, § 41, was thereby employed in the schools of the town thereafter to serve "at the discretion of the school committee" subject to the provisions of law regarding termination of the employment. She continued in this employ until October 14, 1930, rendering constant and competent service and being of good moral character. The respondents have constituted the school committee of the town since April 23, 1930. On May 20, 1930, this committee unanimously voted to instruct the superintendent of schools to

"eliminate from our teaching force female married teachers." This vote was taken without prior specific recommendation in regard thereto by the superintendent. At that time there were four married female teachers employed in the schools; one of them as music supervisor on part time with no particular class or class room under her supervision but engaged in going from class to class advising with the room teachers on music instruction, and, to a certain extent, giving instruction to the class as a group. On May 26, 1930, the petitioner was informed by the superintendent of the vote of May 20, and was invited to resign. This she refused to do. Since May 20 two of the four female married teachers have resigned; the petitioner has not resigned; and the fourth, having been reëlected by the defendants as music supervisor, continued her work — the only married woman employed in the schools of Hopedale.

On September 8, 1930, the superintendent gave to the committee the following letter: "In view of the fact that your committee has already adopted a rule precluding the employment of married teachers in your schools, I hereby respectfully recommend the dismissal of Mrs. Elba S. Sheldon as a teacher in the public schools." On September 10 the committee voted to take a vote on the dismissal of the petitioner at a meeting to be held on October 14, 1930; and that she be notified forthwith of this intention. She received notice containing a copy of the vote on September 11. This was at least thirty days, exclusive of customary vacation periods, prior to the meeting at which the vote was to be taken. No actual decrease in the number of pupils in the schools of the town rendered her dismissal advisable. On September 17 she mailed to the committee a request for a statement of reasons proposed for her dismissal, and a request for a hearing at which she might be accompanied by a witness. On September 19 she received from the committee two letters. One stated: ". . . your dismissal is proposed for the following reason: the School Committee, after careful consideration of the matter, and believing that the best interests of the schools would be served by limiting the employment of female teachers to those who are unmarried,

adopted a vote to eliminate married female teachers from the teaching force. "Your marriage conflicts with this established rule." The other appointed a time and place for a hearing on October 14, 1930. The petitioner appeared with a witness at the hearing, read a statement and left it with the committee. She was informed the committee would consider the matter and notify her. Later, on the same evening, the committee voted unanimously that the petitioner be dismissed, to take effect forthwith, and so notified her. Another teacher in her place was elected on October 14, and began teaching on the next day. The notification and vote of dismissal were prepared before the meeting.

The single justice found that in 1928 the petitioner, contemplating marriage, spoke with the superintendent to find out whether marriage would affect her position, and was told that it would not, that he thought married teachers the best and would be glad to keep her on. At that time no objection on the part of those then constituting the school committee was made. There was no evidence that her contemplated marriage was made known to the committee. She married in 1928, relying on the superintendent's assurance. The music supervisor was continued in service because it was difficult to secure a part time teacher, and because the committee did not consider her to be a regular teacher. Rules against the employment of married women as teachers and requiring female teachers on marrying to resign or be dismissed have been in force in many places before and continuously since the vote of May 20, 1930. The committee throughout have acted in good faith and in the belief that their rule was of benefit to the schools.

Many of the foregoing facts are immaterial to the legal rights of the parties. Until St. 1886, c. 313, took effect no statutory provision fixed a term of service for a teacher in the employ of school committees. By St. 1844, c. 32, the school committee of any town was, in express terms, "authorized to dismiss from employment any teacher in such town, whenever the said committee may think proper." And this power was upheld in *Knowles* v. *Boston,* 12 Gray, 339, 340, which held that under the provisions of St. 1844,

c. 32, and of St. 1854, c. 448, § 56, (which dealt with the public schools of Boston and authorized the committee to elect such instructors "as they may deem proper, and remove the same whenever they consider it expedient"), a teacher "was liable to dismissal at any time by the school committee." The opinion ends in these words: "It was suggested that the statute did not intend to authorize school committees to dismiss teachers unless some fault or neglect was committed by them in the performance of their duties. But this is altogether too narrow an interpretation of the provisions of this statute. The power is conferred in the most general terms, and is to be exercised whenever in the judgment of those to whom it is committed the public good for any cause requires it. Of this they are the exclusive judges." In the light of this clear interpretation of their meaning, the Legislature carried the words into the General Statutes (c. 38, § 25) and the Public Statutes (c. 44, § 30). It omitted them in the Revised Laws (c. 42, § 31), but in virtue of the rule continuing the force of any statute notwithstanding a change in its expression unless a contrary intent appeared, without change in the grant of the power to "dismiss any teacher." St. 1886, c. 313, § 1, in "An Act relating to the tenure of office of teachers," empowered school committees to elect any duly qualified person who had served as a teacher in its public schools for a period of not less than one year, "to serve as a teacher in the public schools of such city or town during the pleasure of such committee," but did not go further. The power of dismissal was not affected by statute until St. 1914, c. 714, went into effect on July 1, 1914. That statute, after providing, as already stated, that a teacher who had served in the schools of a city or town other than Boston for three consecutive years, on being again elected, should be employed "at the discretion of the school committee," by §§ 2–9 authorized the committee to dismiss any teacher by a two-thirds vote of the whole committee, provided that a teacher, employed to serve at the discretion of the committee, should not be dismissed unless notice be given the teacher of the intention of the committee to vote upon his dismissal at a meeting to be held

at a future date not less than thirty days exclusive of customary vacation periods before that meeting, nor unless "the superintendent of schools shall have given to the school committee his recommendations as to the proposed dismissal." Nothing in the act was to limit the committee's power to dismiss for conduct which was immoral or unbecoming a teacher, nor when the action was made advisable by an actual decrease in the number of pupils in the schools of the city or town. A further provision was made by St. 1921, c. 293, that the dismissal should not be valid unless, if the teacher so requested, "he has been given a hearing before the school committee, at which he may be accompanied by a witness."

It is manifest that the broad power of dismissal as it had existed at least since 1844 was not confined further than by the express limitations imposed in 1914 and 1921. If they are complied with, the dismissal rests as fully as ever it did in the discretion of the committee. The teacher is notified of what it is proposed to do. He is given at least thirty days to consider his own course of action. He shall be heard if he desires, and a witness may accompany him. He has the chance of a recommendation from the superintendent that he be retained. Nevertheless, faithful service, good morals, ability in his profession, on his part, are not conditions upon the powers of the committee. If in its judgment the welfare of the schools so requires and by a two-thirds vote it decides to dismiss, the dismissal is valid. It is not essential that the recommendation of the superintendent shall favor the dismissal. The board must have the superintendent's advice, *Duffey* v. *School Committee of Hopkinton*, 236 Mass. 5, but nothing in the law indicates that it must control their action. Any other position would place the superintendent above the board. Here, whatever may have been or may still be his opinion on the broad question of the value of married women as teachers, as one charged with carrying out its policies he has given his recommendation for this application of its rule. It is no subterfuge. Nothing in the statutes makes the decision dependent upon what may have happened in the case of other teachers. No action taken by the teacher

in reliance on such a representation estops the future board.

We need not consider how bad faith on the part of members of the committee may affect the validity of a board's action.   See *Sweeney* v. *School Committee of Revere*, 249 Mass. 525.   The single justice has found, and the parties substantially admit, the good faith of all parties in the matter before us.   A decision that wise administration of public schools calls for the elimination of women teachers if they are married is not so irrational that it is inconsistent in law with good faith in dealing with a question of dismissal.   Decisions elsewhere are not controlling.   No decision of this court supports the contention of the petitioner. In *Duffey* v. *School Committee of Hopkinton*, 236 Mass. 5, no recommendation of the superintendent was made.   In *Sweeney* v. *School Committee of Revere*, 249 Mass. 525, bad faith was found which vitiated the vote of the committee. The conclusion here reached is in accord with the principles announced in the cases thus cited and with the decisions in *Knowles* v. *Boston*, 12 Gray, 339, *School District No. 10 in Uxbridge* v. *Mowry*, 9 Allen, 94, *Wood* v. *Medfield*, 123 Mass. 545, *Sweeney* v. *School Committee of Revere*, 249 Mass. 525, *Corrigan* v. *School Committee of New Bedford*, 250 Mass. 334, and *Toothaker* v. *School Committee of Rockland*, 256 Mass. 584, 591.

The single justice was right in his ruling.

*Exceptions overruled.*