MAYOR OF SOMERVILLE *vs.* DISTRICT COURT OF SOMERVILLE.

Middlesex.   May 2, 1939. — September 20, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Civil Service. Married Woman. Constitutional Law,* Public employment, Police power. *District Court,* Review of action with respect to civil service. *Municipal Corporations,* By-laws and ordinances. *Evidence,* Presumptions and burden of proof. *Words,* "Review," "Cause," "Reasons."

Upon a review by a District Court under G. L. (Ter. Ed.) c. 31, § 45, as amended, of action by the mayor of a city in removing certain employees under civil service, the burden was upon the employees to establish that the removal either was made without proper cause or was made in bad faith.

Upon review by a District Court under G. L. (Ter. Ed.) c. 31, § 45, as amended, of a removal of an employee under civil service, the inquiry as to "proper cause" is restricted to what is set out in the "reasons specifically given" under § 43.

Upon petitions for review under G. L. (Ter. Ed.) c. 31, § 45, as amended, of action by the mayor of a city in removing certain employees under civil service, where the District Court judge received as evidence a stenographic report, including exhibits, of the evidence before the mayor and further testimony of the employees and of most of the other witnesses who had testified before the mayor, a decision by the judge, without a report of the evidence and consistent with his subsidiary findings, showing affirmatively that there was no "proper cause" for the mayor's action for any of the "reasons specifically given" by him under § 43, was final.

An ordinance of a city providing, "No married woman shall be employed in any capacity in any department of the city" unless "legally separated or divorced from her husband," or unless her "husband is unable to support her, by reason of physical or mental incapacity," was unconstitutional and as a matter of law did not furnish "proper cause" within G. L. (Ter. Ed.) c. 31, § 45, as amended, for removal of married women from civil service employment.

A reason, specified by the mayor of a city for the removal of certain married women from civil service employment, namely, that their continued employment would be in conflict with a "policy," adopted by him "in the exercise of the powers conferred upon" him as mayor, "of eliminating married women employees from positions in the service of the city," as a matter of law did not constitute "proper cause" for the removals within G. L. (Ter. Ed.) c. 31, § 45, as amended.

An employee in the classified civil service is protected from loss of his position by reason of its unlawful abolition by executive or administrative action as fully as he is protected against unlawful removal from a position that is not abolished.

A conclusion by a judge of a District Court upon a review under G. L. (Ter. Ed.) c. 31, § 45, as amended, that a reason, assigned by the mayor of a city for removal of married women employed in the city's water and welfare departments, that their positions were "abolished" "in the interest of achieving an economical and prudent administration of the affairs of the city, by the abolition of unnecessary positions in the departments of the city," was not a "proper cause" for removal, was consistent with his subsidiary findings that "it was not possible to abolish their positions except by permanently reducing the number of employees engaged in similar work; that this was not done in fact"; and, on certiorari, where the evidence before the judge, which had consisted of a stenographic report of the evidence before the mayor, "including the exhibits," and of testimony of the employees and of most of the witnesses who had been heard by the mayor, was not reported, such conclusion of the judge must stand.

PETITIONS, filed in the Supreme Judicial Court for the county of Middlesex on January 20, 1939, for writs of certiorari.

The cases were heard by *Ronan*, J.

In this court the cases were argued at the bar in May, 1939, before *Field*, C.J., *Qua, Dolan, & Cox*, JJ., and after the retirement of *Donahue & Cox*, JJ., were submitted on briefs to *Lummus, Wilkins, & Spalding*, JJ.

*R. Clapp*, Assistant Attorney General, for the respondent.

*R. J. Muldoon*, for the petitioner.

*W. P. Murray*, by leave of court, submitted a brief as amicus curiae.

FIELD, C.J. Six women in the classified civil service employed by the city of Somerville were removed from their positions by the mayor of the city. Three of them were employed in the department of public welfare of the city and their positions are described respectively as "Social Worker," "First Clerk" and "Dental Assistant." The other three were employed in the water department of the city and their positions are described respectively as "First Clerk," "Clerk" and "Clerk."

The statute applicable to such removals is G. L. (Ter. Ed.) c. 31, § 43. There is no contention that the procedural

requirements of this statute were not followed, nor that the mayor was not the officer having the power of removal. See St. 1899, c. 240, § 44.

In the case of each of the employees here involved the "reasons specifically given . . . in writing" for her removal, as required by G. L. (Ter. Ed.) c. 31, § 43, were (a) that the "status [of the employee] as a married woman precludes the continuance of . . . [her] employment by the City . . . as such continued employment would be in conflict" with an ordinance of the city providing that, with some exceptions, "No married woman shall be employed in any capacity in any department of the City of Somerville"; (b) that the mayor "adopted the policy of eliminating married women employees from positions in the service of the City," and that the "continued employment [of the employee] would be in conflict with this policy"; and (c) that in "the interest of achieving an economical and prudent administration of the affairs of the City, by the abolition of unnecessary positions in the departments of the City," the position now held by the employee "is abolished" and she is "removed from the service of the City."

Thereafter each of these employees brought a petition in the District Court under G. L. (Ter. Ed.) c. 31, § 45, as amended by St. 1934, c. 249, § 2, praying that the action of the mayor be reviewed by the District Court. This section provides that the District Court "shall review such action, hear the witnesses, and shall affirm the decision of the officer or Board unless it shall appear that it was made without proper cause or in bad faith, in which case said decision shall be reversed and the petitioner be reinstated in his office without loss of compensation," and that the "decision of the court shall be final and conclusive upon the parties." The petitions were heard together in a District Court by a special justice, herein referred to as the trial judge, upon a stenographic report, "including the exhibits." "The . . . [employees] testified and most of the other witnesses who had testified at the hearing before the . . . [mayor]. In addition, the . . . [mayor] testified without objection on the part of the . . . [employees], but his evidence was limited

to matters occurring prior to the hearing which he accorded the . . . [employees]." Included in the evidence was a statement made by the mayor prior to his taking evidence at the hearing granted by him to the employees, in which he set forth the reasons for the removal by him of these employees from the service. The trial judge reversed the decision of the mayor "removing the . . . [employees] and each of them" and ordered "that the . . . [employees] and each of them be reinstated without loss of pay." Findings of fact made by the trial judge are hereinafter set forth.

A proceeding under G. L. (Ter. Ed.) c. 31, § 45, as amended, like a proceeding under G. L. (Ter. Ed.) c. 31, § 42B, applicable to police officers in the classified service, is a "review" of the action of the removing officer. But the scope of review under § 45, as amended, is narrower than the scope of review under § 42B, which provides with respect to the removal of a police officer that, after a hearing before the removing officer or board, if the District Court "finds that such action was justified, the decision at the hearing shall be affirmed." *Costa* v. *District Court at Eastern Essex,* 305 Mass. 85, 86. *Parker* v. *District Court of East Norfolk,* 309 Mass. 377, 379, and cases cited. The word "review" as used in G. L. (Ter. Ed.) c. 31, § 45, as amended, "does not in this connection imply a retrial upon the merits. It indicates a re-examination of a proceeding, already concluded, for the purpose of preventing a result which appears not to be based upon the exercise of an unbiased and reasonable judgment. It does not import a reversal of the earlier decision honestly made upon evidence which appears to an unprejudiced mind sufficient to warrant the decision made although of a character respecting the weight of which two impartial minds might well reach different conclusions, and upon which the reviewing magistrate, if trying the whole issue afresh, might make a different finding." And the burden of establishing the essential facts — that the removal was made "without proper cause" or made "in bad faith" — rests upon the employee removed. *Murray* v. *Justices of the Municipal Court of the City of Boston,* 233 Mass. 186, 189. See also *Mayor of Medford* v. *Judge of First District*

*Court of Eastern Middlesex,* 249 Mass. 465, 470–471; *Ott
v. Board of Registration in Medicine,* 276 Mass. 566, 569;
*Commissioner of Institutions of Boston v. Justice of the Munic-
ipal Court of the Roxbury District,* 290 Mass. 460, 463; *Walsh
v. District Court of Springfield,* 297 Mass. 472, 475, 476–477;
*Costa v. District Court of Eastern Essex,* 305 Mass. 85, 86–
88. A "review" under G. L. (Ter. Ed.) c. 31, § 42B, differs
from a "review" under G. L. (Ter. Ed.) c. 31, § 45, as
amended, not only with respect to the issue to be determined
in the District Court, but also with respect to the burden
of proof. Under G. L. (Ter. Ed.) c. 31, § 42B, support of
the action of the removing officer requires "an affirmative
finding by the court in the exercise of sound judicial judg-
ment upon all the evidence that such action 'was justified,'"
importing that "the preponderance of proof on all the evi-
dence must support the conclusion that such action 'was
justified.'" *Selectmen of Wakefield v. Judge of First District
Court of Eastern Middlesex,* 262 Mass. 477, 482. *Mayor of
Lynn v. Judge of the District Court of Southern Essex,* 263
Mass. 596, 598–599.

After the decision in the District Court the mayor brought
this petition against the judge of the District Court (see
*Walsh v. District Court of Springfield,* 297 Mass. 472, 476)
for a writ of certiorari to quash the proceedings ordering the
reinstatement of the six employees who had been removed
by him. *McLaughlin v. Mayor of Cambridge,* 253 Mass.
193, 199–200, and cases cited. *Whitney v. Judge of the Dis-
trict Court of Northern Berkshire,* 271 Mass. 448, 458. The
case was heard by a justice of this court upon the petition
and the return of the respondent and, after hearing, the
justice ruled and ordered as follows: "Because I cannot say
as matter of law that reasonable men charged with the per-
formance of such executive functions, as was the petitioner,
could not fairly and impartially come to the same conclu-
sion that he reached, I cannot rule that the assigned cause
for the removals in question was an improper or inadequate
cause. An order is to be entered ordering the writ to issue."
The respondent excepted.

We interpret the order that a writ of certiorari issue as an

order that the decision of the District Court be quashed, which was the purpose of the order since, as a return to the petition had been filed, there was no occasion to issue the writ. *Sesnovich* v. *Board of Appeal of Boston*, 313 Mass. 393, 398–400.

The ruling and order of the single justice were erroneous.

The return of the respondent to the petition sets forth with other matters hereinbefore stated the findings and decision of the trial judge as follows: "In reviewing the action of the . . . [mayor] in removing the . . . [employees], I find: That the . . . [employees] had been employed for many years under the protection of the State civil service laws, were experienced and skilled in their work and had performed their duties with ability and fidelity; that the . . . [mayor] and the heads of the departments where they were employed entertained no bias or ill-will toward any of the . . . [employees]; that the duties of the . . . [employees] were so general in the departments where they were employed, that it was not possible to abolish their positions except by permanently reducing the number of employees engaged in similar work; that this was not done in fact, nor could it be done without neglecting the work of the departments; that the only reason for the removal of the . . . [employees] was that they were married women whose husbands were gainfully employed; and that the other causes assigned for their removal were not justified. I therefore find, that the . . . [employees], and each of them, were removed without proper cause, although I believe that the . . . [mayor] acted in good faith. Accordingly, I reverse the decision of the . . . [mayor] removing the . . . [employees] and each of them and order that the . . . [employees] and each of them be reinstated without loss of pay." The return contains the following statement which apparently is a finding of fact by the trial judge: "In the public welfare department where three of the . . . [employees] were employed . . . [the mayor] approved employment of eight additional employees, an increase in the salary of one employee in the sum of $220 and the extension of four temporary employees

for thirty days during the ten weeks immediately prior to the discharge of the three . . . [employees] employed in that department." The return also sets forth the disposition by the trial judge of the requests for rulings made by the parties.

Notwithstanding some language in the findings of the trial judge possibly susceptible of a different interpretation, we interpret the return as showing that the trial judge considered the case in accordance with the rule applicable to a hearing under G. L. (Ter. Ed.) c. 31, § 45, as amended, that such a hearing constitutes "a re-examination of a proceeding, already concluded," and not "a retrial upon the merits" (see *Murray* v. *Justices of the Municipal Court of the City of Boston*, 233 Mass. 186, 189), and that the trial judge considered the case upon the correct basis that the decision of the mayor should be reversed only if it appeared affirmatively that the removals were made by the mayor "without proper cause or in bad faith," and not upon the basis, applicable to proceedings under G. L. (Ter. Ed.) c. 31, § 42B, that the decision should be reversed unless it affirmatively appeared that the removals by the mayor were "justified." See *Commissioner of Institutions of Boston* v. *Justice of the Municipal Court of the Roxbury District*, 290 Mass. 460, 463.

First. We consider first whether the return discloses that it appeared affirmatively that each of the employees here in question was removed from her position "without proper cause."

The return shows that the trial judge found that "the . . . [employees], and each of them, were removed without proper cause." Apparently this ultimate finding was based wholly upon the subsidiary findings and the applicable principles of law. See *Mahoney* v. *C & R Construction Co.* 311 Mass. 558, 559. It is, however, unnecessary to decide whether this is the correct construction of this finding since it appears affirmatively from the subsidiary findings and the applicable principles of law that these employees were removed "without proper cause."

The word "cause" and the word "reasons" in the appli-

cable provisions in G. L. (Ter. Ed.) c. 31, § 43, that a person shall not be removed from an employment "except for just cause, and for reasons specifically given him in writing" have somewhat different meanings. See *McKenna* v. *White*, 287 Mass. 495, 497–498. But upon "review" under G. L. (Ter. Ed.) c. 31, § 45, of the action of a removing officer in removing a person from employment, it is to be assumed that there was no "proper cause" for the removal not comprehended within the "reasons specified." The person removed was not required to show affirmatively that there was no other "proper cause" for his removal. We consider, therefore, whether it affirmatively appeared that there was not "proper cause" for the removals of these employees for any of the "reasons specified." Three reasons for the removal of each of these employees — the same in each instance — were specified.

1. The first reason specified by the mayor for the removal of each of the employees was as follows: "Your status as a married woman precludes the continuance of your employment by the City of Somerville as such continued employment would be in conflict with Section 1 of the Ordinance #19 of the Ordinances of the City of Somerville which provides, 'No married woman shall be employed in any capacity in any department of the City of Somerville. This section shall not apply to a married woman legally separated or divorced from her husband, or to one whose husband is unable to support her, by reason of physical or mental incapacity.'"

As matter of law this reason for the removals did not constitute "proper cause" therefor. In *Opinion of the Justices*, 303 Mass. 631, the justices then constituting the court considered certain proposed statutes relating to the exclusion of married women from public employment. In an opinion signed by a majority of the justices the view was expressed that "a statute providing for a comprehensive exclusion of all married women from public employment would be unconstitutional" (page 653). This opinion contained the following statements: "The principal — if not the exclusive — basis for regulation by statute of the

selection of persons for employment in the public service is their qualifications for the performance of the duties that are to be performed. . . . It may be that it could be found that married women as a class are not qualified — or are substantially less qualified than unmarried women as a class — for some employments in the public service. See *Sheldon* v. *School Committee of Hopedale*, 276 Mass. 230, 236; *Rinaldo* v. *School Committee of Revere*, 294 Mass. 167, 169–170. But we are of opinion that it cannot be found that married women as a class are so lacking — either absolutely or relatively as compared with unmarried women as a class — in qualifications for employment in all branches of the public service that the exclusion of married women as a class from public employment of every nature on the ground of lack of qualifications therefor would be reasonable. We are further of opinion that — apart from the matter of qualifications already considered — no ground having a substantial relation to the public welfare can be found for excluding married women as a class from employment in the public service" (pages 648–649).

Some of the proposed statutes provided for exceptions to a comprehensive exclusion of all married women from public employment applicable to "married women who have not full marital status" and to "married women whose husbands are under some limitations with respect to their ability to support their wives." With respect to these exceptions from exclusion from public employment it was said: "But even these proposed modifications of the classification fall short of meeting the objections already stated to a statutory discrimination in the selection of persons for public employment in favor of unmarried women as a class and against married women as a class. Clearly none of the exceptions would render the proposed discrimination more reasonable on the basis of qualifications for employment, and, even if need of employment for support is to be given weight in such selection, the discriminations resulting under these modified classifications in favor of unmarried women as a class and against married women as a class, subject to the proposed exceptions, could not in our opinion be

found to be reasonable. We conclude, therefore, that . . . [certain proposed statutes providing for the exclusion from public employment of married women with some exceptions], if enacted, would be in violation of the Constitution of the Commonwealth because making arbitrary discriminations in the selection of persons for employment in the public service" (pages 653–654). The questions submitted to the justices were answered by a majority of the justices in conformity with these principles (page 655).

A minority of the justices, however, agreed "with the opinion signed by the majority of the Justices that the general exclusion of married women from the public employment solely on account of their marital status would be contrary to law," but did not "agree that it is not within the competency of the General Court to determine that, in the interest of the common good, the employment of such women should be prohibited, if their husbands are gainfully employed or able to furnish them with adequate support" (page 656). These justices expressed the view that "the prohibition by law of the employment of married women" would be unconstitutional if "all married women are to be excluded," but would not be unconstitutional if "only married women whose husbands are able to support them are to be excluded" (pages 633–634, 663–664). The questions submitted to the justices were answered by a minority of the justices in conformity with these principles (page 664).

While such opinions rendered in compliance with c. 3, art. 2, of the Constitution of the Commonwealth are not binding authorities but are subject to reëxamination and revision if and when the points considered are raised in litigation (*Mayor of Lynn* v. *Commissioner of Civil Service,* 269 Mass. 410, 413; *Keenan, petitioner,* 310 Mass. 166, 172), on reëxamination we adopt the conclusions stated in the opinion signed by a majority of the justices. The grounds for these conclusions were fully set forth in the opinion signed by a majority of the justices and need not be restated at length.

No case decided by this court since the *Opinion of the*

*Justices* here referred to was rendered is in conflict with the conclusions announced in the opinion signed by a majority of the justices. The case of *Houghton* v. *School Committee of Somerville*, 306 Mass. 542, is not in conflict with these conclusions. That case involved the dismissal of a married woman who was employed as a teacher in the public schools on tenure at the discretion of the school committee under G. L. (Ter. Ed.) c. 71, § 41. The school committee "voted to dismiss her, having previously given as the reason for the proposed dismissal that it was 'the policy of the school committee that the best interests of the school [schools?] will be served by the elimination of married women teachers as evidenced and declared' by a rule of the committee. The rule provided that the marriage of a permanent teacher should 'operate as an automatic resignation'; that no married woman should thereafter be elected as a permanent teacher; and that 'No married woman now in the service shall hereafter be employed as a permanent teacher . . . except one who proves to the satisfaction of the school committee that she is living apart from her husband and receiving no support from him, or that her husband is physically or mentally disabled so that he is unable to provide for her support'" (page 543). The court said that it had "twice decided that the adoption of a policy against the employment of married teachers in public schools is not arbitrary or irrational and lies within the field of discretion of the school committee, to whom is entrusted the determination of questions of policy. *Sheldon* v. *School Committee of Hopedale*, 276 Mass. 230, 236. *Rinaldo* v. *School Committee of Revere*, 294 Mass. 167. . . . Nothing in *Opinion of the Justices*, 303 Mass. 631, is at variance with the decisions in the *Sheldon* and *Rinaldo* cases. See page 648." This reference to the *Opinion of the Justices* obviously was to the statement in the opinion signed by a majority of the justices that it "may be that it could be found that married women as a class are not qualified — or are substantially less qualified than unmarried women as a class — for some employments in the public service," citing the *Sheldon* and *Rinaldo* cases. The *Houghton* case did not deal with the

exclusion of married women as a class from public employ-
ment of every nature, as did the *Opinion of the Justices*. On
the contrary, the *Houghton* case dealt with the exclusion of
married women only from a particular kind of public em-
ployment the nature of which was such that the exclusion of
married women therefrom might be found to have some
rational relation to the public welfare and consequently
was within the field of discretion of the removing officers.
See *Houghton* v. *School Committee of Somerville*, 306 Mass.
542, 543. Compare *Opinion of the Justices*, 303 Mass. 631,
648–649.

The principles announced in the *Opinion of the Justices*,
303 Mass. 631, in the opinion signed by a majority of the
justices, pages 637–655, as applicable to statutes passed by
the General Court are applicable to an ordinance of the
same nature passed by the legislative department of a city,
as in the case at bar. A city has no greater power to exclude
by ordinance married women as a class from employment
by the city than has the General Court by statute to exclude
married women as a class from all public employment.
And the more limited territorial application of a city ordi-
nance of this nature furnishes no ground for distinguishing
such an ordinance from a statute of the same nature. In-
deed some of the proposed statutes considered in the *Opinion
of the Justices*, although in form of general application, were
of limited territorial application in the sense that they were
to be applicable only to cities and towns accepting them,
and one of the proposed statutes related only to one city
and was to be applicable to that city only if accepted by
that city.

The principles announced in the *Opinion of the Justices*,
303 Mass. 631, in the opinion signed by a majority of the
justices, pages 637–655, are applicable to the city ordinance
here in question, which prohibited the employment of mar-
ried women as a class in public employment of every nature
by the city of Somerville. The ordinance was not limited
in its application to any particular kind of employment,
the nature of which was such that the exclusion of married
women therefrom might be found to have some rational

relation to the public welfare as was the rule of the school committee considered in *Houghton* v. *School Committee of Somerville,* 306 Mass. 542. Whether in the case of any of the employees here in question the nature of her employment was such as to justify an ordinance excluding married women from such employment, or to render the fact that she was a married woman a "proper cause" for her removal therefrom, need not be considered. The ordinance applied to all employments of every nature, and, according to the facts found by the trial judge, the "only reason for the removal of . . . [these employees] was that they were married women whose husbands were gainfully employed" — a finding that excluded any cause for the removal of these employees based on the particular nature of their employment. Consequently, according to the principles announced in the *Opinion of the Justices,* 303 Mass. 631, in the opinion signed by a majority of the justices, pages 637–655, the conclusions of which we adopt, the city ordinance furnished no "proper cause" for the removal of these employees. Such an ordinance, excluding married women from all employment by the city of Somerville, although inapplicable to "a married woman legally separated or divorced from her husband, or to one whose husband is unable to support her, by reason of physical or mental incapacity," is invalid because depriving married women of their constitutional rights to equal opportunity for selection for public employment upon grounds having no substantial relation to the public welfare.

2. The second reason specified by the mayor for the removal of each of the employees was as follows: "In the exercise of the powers conferred upon me as Mayor of Somerville, I have adopted the policy of eliminating married women employees from positions in the service of the City. Your continued employment would be in conflict with this policy."

As matter of law this reason for the removal did not constitute "proper cause" therefor. We need not consider whether, in the distribution of powers between the executive and the legislative departments of the city, the adop-

tion of the policy adopted by the mayor, if it had been a policy that the city could legally adopt, would have been within the power of the executive department of the city, or within the power of the legislative department of the city acting by ordinance. In any event the legal objection already stated to the adoption of this policy by an ordinance of the city applies with equal force to the adoption of this policy by the mayor.

3. The third reason specified by the mayor for the removal of each of these employees was as follows: "In the interest of achieving an economical and prudent administration of the affairs of the City, by the abolition of unnecessary positions in the departments of the City, you are hereby informed that the position . . . [describing the position held by the particular employee] now held by you, is abolished; and you are removed from the service of the City . . .."

It may be doubted whether, in view of the facts found by the trial judge, it is necessary to consider whether there was "proper cause" for the removal of these employees for this specified reason. Apparently the trial judge found that these employees were not in fact removed for this reason, although it is possible that his findings are susceptible of a different construction. The trial judge found "that the only reason for the removal of . . . [these employees] was that they were married women whose husbands were gainfully employed; and that the other causes assigned for their removal were not justified." Obviously the "other causes assigned" are those stated in the third specified reason now under consideration. But it is conceivable that the finding as to "the only reason for the removal" is not separable from the finding that the "other causes" were not justified, and is not a finding that such "other causes," if justified, were not the reason for the removal. However, we deem it unnecessary to determine the meaning of this finding in this particular, and we pass without discussion the question whether if the "other causes" were justified the decision should be reversed because — as his finding might be interpreted — the removal

was not in fact made by the mayor for such "other causes."

· Furthermore, the findings as to the "only reason for the removal" of these employees and as to "other causes assigned" not being "justified" are, perhaps, susceptible of the construction that the "other' causes assigned" were mere pretenses for the removal and consequently that the removal for such "other causes assigned" was made "in bad faith." See *Garvey* v. *Lowell,* 199 Mass. 47, 50; *Dooling* v. *Fire Commissioner of Malden,* 309 Mass. 156, 161. Some support for such a conclusion may perhaps be found in the other findings of the trial judge. The third reason specified for the removal of these employees was the abolition of the positions held by them. The trial judge found, however, that "it was not possible to abolish their positions except by permanently reducing the number of employees engaged in similar work; that this was not done in fact." The requirement of good faith in the removal of employees adds something to the requirement of proper cause therefor. A removing officer has some scope for the exercise of discretion and a removal by him "upon evidence . . . sufficient to warrant the decision" is not to be reversed merely because "the reviewing magistrate, if trying the whole issue afresh, might make a different finding." *Murray* v. *Justices of the Municipal Court of the City of Boston,* 233 Mass, 186, 189. But the decision must be "honestly made" (page 189). And even if the evidence would have warranted a finding by the reviewing officer that the removal was for "proper cause" the removal should be reversed if it appeared affirmatively that it was made "in bad faith" as would be the case if this cause was a "mere pretext or device to get rid of" the employee for some other and improper cause. *Garvey* v. *Lowell,* 199 Mass. 47, 50. The trial judge in the present case, however, made a finding in these words, "I believe that the . . . [mayor] acted in good faith." Whether this finding is applicable to the third specified reason now under consideration or whether, upon any interpretation of this finding, the other findings require the conclusion that the removal of these employees, if made for

this reason, was made "in bad faith," may be doubtful. Since, however, this case, so far as it turns upon the third specified reason for the removal of these employees, can be decided without determination of these questions, we leave them at one side.

We are of opinion that the return shows that it appeared affirmatively before the trial judge that there was not "proper cause" for the removal of these employees for the third specified reason.

The basis for the third specified reason for the removal of these employees was the purported abolition by the mayor of their positions. The third specified reason states no other ground for their removal. An employee in the classified civil service is protected from loss of his position by reason of the abolition of his position by executive or administrative action as fully as such employee is protected against loss of his position by removal from a position that is not abolished. "It has been held that the executive or administrative abolition of the position of one who came within the provision of [G. L. (Ter. Ed.) c. 31] § 43 was in effect a removal from his position, and that the failure of the officer who abolished the position to grant the incumbent a hearing entitled the latter to reinstatement. *Lowry* v. *Commissioner of Agriculture*, 302 Mass. 111." *Cullen* v. *Mayor of Newton*, 308 Mass. 578, 581. And G. L. (Ter. Ed.) c. 31, § 45, provides in express terms for judicial action when such an employee's "position is abolished," and in the case of such abolition, as in the case of removal, the decision is to be reversed if it was made "without proper cause or in bad faith." The same test, therefore, is applicable to the abolition of a position by executive or administrative action as to removal of an employee from such a position. Cases involving legislative action of uniform application are distinguishable. See *Cullen* v. *Mayor of Newton*, 308 Mass. 578, 582, and cases cited. Even if under the charter of the city of Somerville the mayor had power to abolish the positions of these employees, his power was subject to the limitations imposed by the civil service laws.

The return, in our opinion, shows that it appeared affirmatively before the trial judge that the positions of these employees were not in fact abolished, and, moreover, that there was not "proper cause" for the abolition of these positions for the reasons specified.

The trial judge found, in effect, though not in express terms, that the positions of these employees were not, in fact, abolished. He found that "the duties of . . . [these employees] were so general in the departments where they were employed that it was not possible to abolish their positions except by permanently reducing the number of employees engaged in similar work" and that "this was not done in fact." We interpret this statement, including the statement of the impossibility of abolishing the positions of these employees "except by permanently reducing the number of employees engaged in similar work," as a finding of fact. The evidence upon which the finding was made is not reported, although there is a subsidiary finding as to the general nature of the duties of these employees. We cannot say that the impossibility of abolishing the positions held by these employees "except by permanently reducing the number of employees engaged in similar work" could not have been found as a fact by the trial judge upon evidence before him. Nor can we say that the other facts stated could not have been found upon such evidence. The finding as to the impossibility of abolishing these positions without "permanently reducing the number of employees engaged in similar work" must stand as true and, with the further finding that there was no such permanent reduction, imports a finding that on the facts of this particular case the positions held by these employees were not abolished. We do not imply that, as matter of law, it is always impossible to abolish a position "except by permanently reducing the number of employees engaged in similar work," although doubtless a failure to reduce such number of employees may have some tendency to show that the positions were not, in fact, abolished, or that a purported abolition of these positions was made "in bad faith." Consequently, the third specified reason for the removal of these employees

— the abolition of their positions — was not a "proper cause" for the removal of the employees.

Moreover, the return shows that it appeared before the trial judge that there was not a "proper cause" for the abolition of the positions held by these employees or for their removal from these positions for the third specified reason.

This third specified reason or cause assigned was "the interest of achieving an economical and prudent administration of the affairs of the City, by the abolition of unnecessary positions in the departments of the City." The trial judge rightly ruled upon the requests of one or both of the parties that this was a sufficient reason in law for the abolition of the positions or the removal of employees therefrom. The "abolition of an unnecessary position" has been described as "laudable." *Garvey* v. *Lowell*, 199 Mass. 47, 50. "The abolition of an unnecessary position made in good faith plainly is the duty of an executive or administrative officer. One holding such a position, though efficient in the performance of his duties, may be removed simply because the position is no longer necessary, provided the removal is made in good faith, and the recital of that reason is not made the cover for some other unjustifiable motive." *Gardner* v. *Lowell*, 221 Mass. 150, 154. See also *Commissioner of Public Works of Boston* v. *Justice of the Municipal Court of the Dorchester District*, 228 Mass. 12, 14, 16; *Yunitz* v. *Chelsea*, 270 Mass. 179, 181; *Whalen* v. *City Forester of Waltham*, 279 Mass. 287, 292; *Williams* v. *New Bedford*, 303 Mass. 213, 216; *Cullen* v. *Mayor of Newton*, 308 Mass. 578, 580; *Dooling* v. *Fire Commissioner of Malden*, 309 Mass. 156, 161.

The trial judge, however, found that "the other causes assigned [which included, if they were not limited to, the third specified reason] for their [the employees'] removal were not justified." Since this third specified reason or cause was sufficient in law for the abolition of these positions or for the removal of the employees therefrom, the finding that it was not "justified" must be taken to mean that on the facts of this case this reason or cause for the abolition of

their positions or for the removal of the employees there-from did not exist.   And we cannot say that this finding was not warranted by evidence that may have been before the trial judge although not reported.

Moreover, this finding is supported by subsidiary find-ings.   Doubtless the "abolition of unnecessary positions" would be in the "interest of achieving an economical and prudent administration of the affairs of the City."   How-ever, it does not appear that the particular positions held by these employees were or could be found by the mayor to be "unnecessary positions."   On the contrary, the find-ing as to the general nature of the duties of the employees here involved imports that there was nothing in the nature of the duties of these employees differentiating the positions held by them from the positions held by other employees in the respective departments engaged in similar work.   In view of this finding of fact, even if it were assumed — con-trary to what has already been said — that the positions of the employees here involved were actually abolished, there was no "proper cause" for the abolition as "unnec-essary" of the positions held by these employees not appli-cable to all positions of the same nature and, therefore, there was no "proper cause" for the abolition as "unnec-essary" of the positions held by these employees unless there was an "unnecessary" number of positions of the same na-ture.   The only finding bearing upon the question whether there was an "unnecessary" number of such positions is the finding that "permanently reducing the number of employees engaged in similar work" could not be "done without neglecting the work of the departments."   How-ever, we need not consider the effect of this finding, or the extent to which in such a matter the judgment of the trial judge could be substituted for the judgment of the officer charged with the executive responsibility of control of the departments, who has some latitude of judgment in such a matter so long as he acts in good faith.   See *Murray* v. *Justices of the Municipal Court of the City of Boston,* 233 Mass. 186, 189.   The return shows that the mayor did not abolish or purport to abolish the particular positions of

the employees here in question or remove them from their positions on the ground that there was an "unnecessary" number of positions of the same nature. The trial judge found that the number of such positions was not in fact permanently reduced. It appeared affirmatively that, even if the action of the mayor in abolishing or purporting to abolish the particular positions of the employees here in question or remove them from their positions was not taken "in bad faith," the mayor did not take such action for the reason or cause of the "abolition of unnecessary positions." Whether or not there was an "unnecessary" number of such positions, the mayor did not reduce that number and therefore did not abolish the particular positions of these employees or remove them from their positions for this reason or cause. This analysis of the return discloses that it appeared affirmatively before the trial judge that there was not in fact "proper cause" for the removal by the mayor of these employees from their positions for the third specified reason.

It follows from what has been said with respect to the various specified reasons for the removal of the employees here in question that the removal by the mayor of each of these employees from her position was made "without proper cause."

Second. Since the return discloses that upon the findings of the trial judge the removal by the mayor of each of the employees in question was made "without proper cause," it is unnecessary to consider whether the return discloses that the removal of each or any of these employees from her position was made "in bad faith."

For the reasons here stated it was error for the justice of this court (a) to rule, as he did in substance, that as matter of law the mayor could reach the conclusion to remove the employees in question from their positions and (b) to quash the decision of the District Court reversing the decision of the mayor.

*Exceptions sustained.*