NORMAN PAUL *v.* SCHOOL DISTRICT NO. 2 IN HARTLAND.

*School teacher; time of obtaining certificate;—and sufficient cause for dismissing.*

The plaintiff contracted to teach school for the defendants, and on the morning of the day he commenced, and before commencing his school, he applied to the superintendent for examination and a certificate; but the examination was, at the request of the superintendent, and upon his assurance that it would be as well postponed until evening, at which time, after the commencement of the school, an examination was had and a certificate given; and after this the school proceeded for about seven weeks without objection and without any new contract being made. *Held*, that there was a substantial compliance with the statute requiring a certifi-

catɇ to be obtained before the commencement of the school, and that, in any view of the case, the certificate would be sufficient for the school kept after, if not for the same day that it was given.

The fact that scholars and parents are dissatisfied with a school teacher is no sufficient cause for dismissing him before the expiration of the time for which he has been employed. Evidence to show such dissatisfaction is, therefore, inadmissible in an action to recover damages on account of such a dismissal. To justify it, actual incapacity or unfaithfulness must be shown.

. ASSUMPSIT to recover for services rendered in teaching school for the defendants, and damages for not being permitted to teach for the time contracted for. Plea, the general issue; trial by jury, December Term, 1855,—UNDERWOOD, J., presiding.

The plaintiff, to support the issue on his part, gave evidence tending to show that, in the fall of 1853, Erastus Woodward, prudential committee of the defendant district, made a contract with the plaintiff to teach the defendants' school three and a half months, the then ensuing winter, at $18 per month; that the plaintiff commenced the school the 21st day of November, 1853, and continued the same about seven weeks, when, without fault on his part, and without cause, said Woodward dismissed him.

The defendant, for the purpose of showing good cause for the dismissal, offered to prove, among other things, that the plaintiff's scholars were disaffected with the plaintiff's school, and threatened to leave it; that on the day the plaintiff was dismissed, there was an informal meeting of the inhabitants and most of the legal voters of the district, said Woodward being present, and that said meeting unanimously voted that the plaintiff should be dismissed from the school; to which the plaintiff objected, and the court excluded the same.

The defendants called one Alexander as a witness, whose son attended the plaintiff's school two or three days, when witness permitted his son to leave the school, on his son's complaining about it, and witness refused to Woodward to have his son go back; and the defendants proposed to show, by the witness, the reasons why he would not let his son go back to the plaintiff's school; to this the plaintiff objected, the defendants not proposing to show that the plaintiff was present, or that the witness' reasons were derived from any knowledge of the plaintiff's conduct, and the court excluded it.

The defendants further offered to prove, by said Woodward, that theretofore, in previous years, the school in said district had been good, and that the scolars behaved well. To this the plaintiff objected, and the court excluded it.

The defendants' testimony tended to show that the plaintiff, in managing his school, was cross, crusty and severe in his manner, that he punished the scholars excessively, and neglected the recitations of some of his pupils; that the plaintiff was ill-natured, morose and coarse in his language and manners. The plaintiff put in evidence tending to contradict this.

It appeared that on the morning of the 21st of November, before the plaintiff commenced his school, the plaintiff and his brother went to the superintendent to be examined, that the superintendent examined the plaintiff's brother, and told the plaintiff to call in the evening and he would then examine him, and that it would be just as well for him; that the plaintiff did so, and was not examined till evening, when, on examination, the superintendent gave him the usual certificate.

The plaintiff's testimony tended to show that Woodward treated and recognized the plaintiff as the teacher of the school, after the plaintiff had obtained his certificate, but it did not appear that Woodward ever knew anything about the plaintiff's having or not having a certificate at any time, or of his attempting to obtain one; and there was no evidence of any express new bargain between the plaintiff and said Woodward after the plaintiff obtained his certificate.

The defendant requested the court to charge the jury that, as the plaintiff did not obtain his certificate until after he commenced his school, he could not recover. The plaintiff contended that the certificate obtained, under the circumstances, would relate back to the time of the contract, and entitle the plaintiff to recover from the beginning, and so requested the court to charge. The court refused so to charge, but told the jury, among other things not excepted to, that the plaintiff could recover nothing for the first day's teaching, but if they found that, after the plaintiff obtained his certificate, Woodward recognized the plaintiff as the teacher, and treated him as such, and as going on under the original contract, and that nothing else was said or done, and no new express con-

tract made, and no objection made to the plaintiff's continuing the school, it might be regarded as a confirmation of the original contract, and the plaintiff regarded as having commenced his term, under the contract, on the 22d of November, and he be entitled to recover from that time, provided the jury found the plaintiff was dismissed without sufficient cause; and, to the instruction given to the jury on this point, no exception was taken. To the refusal of the court to charge as requested, both the plaintiff and defendants excepted, and to the exclusion of the testimony offered by them and rejected, the defendants excepted. Verdict for the plaintiff.

*Converse & Barrett* for the defendants.

*Washburn & Marsh* for the plaintiff.

The opinion of the court was delivered by

REDFIELD, CH. J.  I. The question in regard to the certificate of qualifications of the teacher is fundamental to the action. The statute undoubtedly requires the certificate to be cotemporary with the opening of the school. In this case, it bears date the same day the school was opened, and the law will, upon the face of the paper, presume it existed at the time the school was opened, as in such case, events bearing the same date, will be presumed to have occurred in the order in which the law requires them to be transacted, according to the maxim, *ut res magis valeat*. And, ordinarily, the court will not take notice of a part of a day, regarding it as a mere point. But, for many purposes, courts go into proof of very nice distinctions, in regard to time. As where there are conflicting rights, as to priority, between creditors and purchasers, or heirs. We are rather inclined to think that if it were necessary to uphold the contract, in the present case, to refer the certificate to the earliest point of time in the day, as the plaintiff obviously did comply with the substantial requisites of the statute, in obtaining the certificate the same day he began his school, that we ought to do so.

It seems to us, also, if we were to look into the proof, in the present case, that the plaintiff having done all in his power to obtain his certificate, in the early part of the day, and having, by the

superintendent, who has specially the control of the subject of the qualifications of teachers, been referred to the latter part of the day for his examination, with the assurance "that it would be just as well for him," that we should so construe the transaction as to give it the same operation the superintendent intended that it should have, *i. e.,* from the time of the application. This is a familiar principle in the law; and, although a fiction, in regard to the order of events, often is resorted to for purposes of justice and convenience, and will never be permitted to operate where injustice would be its consequence, this seems to us a proper case enough for its application.

But, in any view of this case, as it seems to us, the contract became binding upon the obtaining of the certificate. The contract, as stated in the case, was to teach the school the ensuing winter, three and a half months, no time being specified for the beginning. The statute is, that any contract for teaching school shall be null and void, if the teacher fails to obtain a certificate of qualifications before the commencement of the school. We do not think the party having taught one day before he obtained his certificate, even if it had been dated in the present case the 22d day of November, and he had then continued to teach, that the contract would have been thereby avoided. It might require the performance of the full term, after the certificate was given. But it would certainly be a very rigid and unreasonable construction, under the circumstances of the present case, to make the fact of opening the school a few hours before the actual giving of the certificate, operate a forfeiture of the contract. It would be, in our opinion, what the statute did not contemplate.

II. In regard to the testimony rejected, its relevancy depends something upon the view we take of the grounds for the removal of teachers. The statute is, that the prudential committee may remove teachers "when necessary." Men's views differ very much upon the subject, according to their notions of the qualifications of teachers. The qualifications of teachers, not only as to their competency to teach, but also their moral character and capacity for the government of schools, is referred, in the first instance, certainly, to the determination of the town superintendents. They are expressly required to examine into their qualifications upon all these

points, before giving them certificates, and it would seem that their determination should be regarded as very decisive evidence in regard to the possession of the requisite qualifications. I would not, perhaps, be prepared to admit that it was absolutely conclusive upon the district, or prudential committee. For the qualifications for government are difficult of estimation, and this is the point upon which the difficulty arose in the present case, and upon which it is most likely to occur.

The testimony excluded was chiefly that which tended to show dissatisfaction among the scholars and inhabitants of the district. The other evidence rejected was in regard to the good conduct of the school, before that time, which was offered to add weight to the fact of the complaints. Alexander's reason for keeping his child out of school, after a few days, as it is said he did not know any fact in regard to the manner of governing the school, could only be based upon hearsay and complaint.

The legal force of this evidence will depend upon two considerations.

1. Whether it is the best evidence of which the case admits.

2. Whether the laws of nature, or the course of human experience, shows any necessary or uniform connection between complaints, in such cases, and incompetency or misconduct in teachers.

In regard to this latter part, it seems to us impossible to say that any such connection exists. It will not be pretended there is any necessary connection. And the course of experience shows that, in all the relations of life, where it becomes necessary to exercise control over others, complaints will often arise without any just cause. A mere accident will sometimes set a whole shool district in a blaze about the idlest subject imaginable, and it is often no easy matter to restore quiet and good understanding. Under such circumstances, it would no doubt be the part of the highest wisdom in a teacher, after having made a fair trial, and failed to give even tolerable satisfaction, to retire, and acquiesce in a necessity above his control, although existing without his fault. But if he choose to persist in his right, we do not perceive how he can be deprived of his contract to go on with the school, without a claim to damage for the loss he thereby sustains, unless by showing his incompetency or unfaithfulness.

We are unable to see how this clamor could justify the defend-ants, by their committee, in absolutely removing the plaintiff from his school, unless upon showing that the complaints were well founded; or how he is responsible for the complaints, unless well founded. The very highest order of administrative talent in schools, and every where, is pretty sure to go along quietly. But every one does not possess the gift to govern a school acceptably, in all times and all places, and under all circumstances, for there is no government more trying, under an unfavorable complication of influences. That of administering a great empire is scarcely more trying, either to patience or skill. And it is not reasonable to require this rare combination of administrative ability, in every man, who undertakes to teach a district school, for less wages, it may be, and often is, than he would command in the most ordinary agricultural or mechanical employments.

And, among men of medium ability, and that is all which a con-tract of this kind requires for its performance, among such teachers, as a general thing, perhaps, very often, certainly, the most artful and intriguing, or indulgent, and who care little about the result of their service, if they only get through and get pay, are about as likely, perhaps, to give a sort of negative satisfaction to the pupils, and to the parents, often, as those who sincerely and studiously la-bor to control the school, and to teach the pupils thoroughly, and govern them with reasonable strictness. So that knowing of com-plaints in school, is no certain proof of fault, in the teacher. We must still inquire further. We are, in fact, no nearer the ultimate truth of the matter.

If there is great dissatisfaction, there is more commonly some fault upon both sides, but it is a mere conjecture where the first fault, or the chief fault lies, and results of this loose and uncertain character are not to be resorted to for the purpose of establishing their causes, and especially when the causes are susceptible of the clearest proof. If a cause is latent and involved in mystery and uncertainty, we often resort to very remote circumstances for the purpose of detecting some avenue to such hidden cause.

2. In the present case, the very fact to be found, the manner in which the plaintiff did perform his undertaking, was open to proof

from the whole school. The parents, too, when those complaints came to their knowledge, might have gone and seen for themselves, and, if they did not, they should not now require the court to condemn the plaintiff upon the imperfect and unsatisfactory ground upon which they were content to rely. They might act upon hearsay, but courts have to require proof.

This general dissatisfaction with a teacher, or any one called to exercise authority, is certainly of great importance to be considered, in employing one a second time, but it seems to us no sufficient ground for removal. The considerations which should operate in the selection of a teacher, or in removal from that office, are certainly very difficult. One is a question of discretion and expediency, merely; and the other, one of mere right. A man has no right to expect, and, I think, ought not desire to continue in such a place, against the wishes of any considerable number of those whom he is called to control, beyond the time of his actual contract, even if he could secure a renewal of it. But upon the question of yielding to mere clamor, and actually resigning his post, men are so constituted that they will act differently, and it is not always useful to give too much countenance to the fault-finding spirit. And, at all events, the plaintiff had, in our judgment, by his contract, and the approval of the town superintendent as to his qualifications, acquired the right to insist upon performing his contract, unless he were shown to be, in fact, incompetent or unfaithful; and, if he was removed upon any other ground, he was entitled to damages, according to the circumstances of the removal. This not being made a question, we say no more in regard to it.

In regard to the argument that the defendants might show the effect of the plaintiff's treatment of his scholars, in being cross, crusty and severe, it is obvious that the defendants would have all the benefit of this, in showing, as they might, the immediate effect upon the scholars, at the time. And, the resort to out-of-door declarations of the scholars, or parents, could be of no avail in showing the extent of the plaintiff's moroseness; or the complaints might proceed from other causes. And, even if the complaint was of the plaintiff's ill-temper, it would be but hearsay proof that such was the fact, as men and children often complain of one thing, when

they are, in fact, moved to make complaint from a very different cause, and one which they might hesitate to avow, unless compelled to testify, and this they should be required to do, rather than to allow proof of their mere declarations out of court.

We think the judgment must be affirmed.