CLARA RINALDO *vs.* SCHOOL COMMITTEE OF REVERE.

Suffolk.   February 4, 1936. — March 31, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*School and School Committee.  Married Woman.  Words,* "Good cause."

After a school committee has adopted a policy forbidding the employment of married women teachers, the marriage of a woman teacher employed at discretion properly may be found to be "good cause" for her dismissal under G. L. (Ter. Ed.) c. 71, § 42, as amended by St. 1934, c. 123.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on November 18, 1935.

The petition was heard by *Lummus,* J., who found ma-

terial facts and reported the case for determination by the full court.

*J. F. Mulligan,* (*J. D. Goldberg* with him,) for the petitioner.

*J. F. Dunn, Jr.,* (*J. W. Mahony* with him,) for the respondent.

QUA, J.    The petitioner, after serving as a teacher in the public schools of Revere for the three consecutive school years beginning in 1927, 1928 and 1929, was reëlected in 1930, and thereafter served at the discretion of the school committee under G. L. c. 71, § 41.    In 1927 the committee adopted a rule that "there shall be inserted in the contract of every woman teacher elected a provision that the marriage of the teacher who signs the contract shall terminate the contract and that this provision of the contract shall be in force even after said teacher goes on tenure."    In 1929 the committee adopted a second rule that "the marriage of a woman teacher . . . shall operate as an automatic resignation of said teacher, and this regulation shall apply to teachers on tenure."    The petitioner was well aware of the policy of the committee as indicated by these rules, for her annual contracts of employment, including the final contract as a result of which she went "on tenure" at discretion under the statute, contained express stipulations to which she assented, to the effect that her marriage should terminate the contract.    In June, 1935, she married.    In the following September the committee would not permit her to teach, and on November 12, after notice and a hearing in accordance with G. L. (Ter. Ed.) c. 71, § 42, as amended by St. 1934, c. 123, the committee dismissed her, the "causes" stated being her "violations" of the terms of her contract as a teacher and of the rules hereinbefore mentioned.    There was no evidence of bad faith on the part of the committee.

The primary question to be decided is whether, if a school committee has adopted a policy forbidding the employment of married women teachers, the marriage of a woman teacher can be found to be "good cause" for dismissal under G. L. (Ter. Ed.) c. 71, § 42, which, in its present form

as amended by St. 1934, c. 123, provides that a teacher employed at discretion "shall not be dismissed, except for inefficiency, incapacity, conduct unbecoming a teacher . . . insubordination or other good cause . . . ." We think the answer must be in the affirmative.

"Good cause" for dismissal in a statute of this kind is by no means limited to some form of inefficiency or of misconduct on the part of the person dismissed. *Gardner* v. *Lowell,* 221 Mass. 150, 153. Such matters are amply covered by the words which precede "good cause." Good cause includes any ground which is put forward by the committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system. *Ayers* v. *Hatch,* 175 Mass. 489. *Gaw* v. *Ashley,* 195 Mass. 173, 177. *Dunn* v. *Mayor of Taunton,* 200 Mass. 252, 258. *McKenna* v. *White,* 287 Mass. 495, 497. *Ham* v. *Boston Board of Police,* 142 Mass. 90, 95.

If the cause assigned is at least fairly debatable and is asserted honestly, and not as a subterfuge, that is enough. Whether or not married women should teach in public schools is a matter about which there may be an honest difference of opinion. We need not elaborate the possible arguments. It is enough to say that reported decisions in various jurisdictions show that many local school boards in widely scattered parts of this country and in England have taken the same attitude which the respondents here take. The committee have "general charge" of the public schools in Revere. G. L. (Ter. Ed.) c. 71, § 37. *Leonard* v. *School Committee of Springfield,* 241 Mass. 325. *Averell* v. *Newburyport,* 241 Mass. 333. *Russell* v. *Gannon,* 281 Mass. 398. It is for them and not for the court to determine matters of policy. We are aware that some courts have come to the opposite conclusion, but we find ourselves unable to agree with them. Some of the cases are to be found in 56 C. J. page 403. We adhere to the result which we reached in *Sheldon* v. *School Committee of Hopedale,* 276 Mass. 230, although owing to material changes in the statute made by the 1934 amendment, we have not treated

that case as necessarily controlling. See also *Toothaker* v. *School Committee of Rockland*, 256 Mass. 584; *Short* v. *Poole Corp.* [1926] Ch. 66.

Although the rules here involved had been adopted several years before the petitioner's dismissal, there is nothing to show that they were not still in force. We attach little importance to the form of wording used in them as if designed to effect an automatic removal of the teacher without invoking the machinery of the statute. Technical nicety in drafting cannot be expected in the acts of boards presumably composed of persons who are not lawyers. As declarations of policy the rules were plain and adequate. The statutory procedure was in fact followed. Insistence upon remaining a teacher after marriage could be termed a violation of the second rule at least, if not of the first. The superintendent did give the committee his recommendation as required by the statute. It was in substance that the committee take action to enforce its regulations.

*Petition dismissed.*