394 P.2d 201

Dora KERSEY, Appellant,

v.

MAINE CONSOLIDATED SCHOOL DISTRICT NO. 10 and the Board of Trustees, Namely: William G. Scholz, Zell Canty, and John Ryberg, Appellees.

No. 7265.

Supreme Court of Arizona.

En Banc.

July 13, 1964.

William R. Preston, Flagstaff, and Dix W. Price, Phoenix, for appellant.

Robert W. Pickrell, Atty. Gen., Frank Sagarino, Asst. Atty. Gen., Laurance T. Wren, former Coconino County Atty., and Robert W. Warden, County Atty. of Coconino County, Flagstaff, for appellees.

STRUCKMEYER, Justice.

The Maine Consolidated School District is in a rural area with approximately thirty pupils being taught through the first eight grades. School is conducted from March through November because of the severity of winter storms. Appellant has been a continuing teacher in appellee School District from 1950. The School Board filed charges against appellant which did not reflect on her moral fitness as a teacher. On these charges, her teaching contract was terminated. Thereafter, she duly appealed to the superior court for a trial de novo pursuant to A.R.S. § 15–255.

At the trial de novo, testimony established such complaints as that some children were not allowed to go to the rest rooms without facing loss of recess time; a child who complained of excessive school bus speed was placed in the back of the bus; a child was taken from school property to the home of another parent in an attempt to resolve a disciplinary problem; a teacher under her supervision was allowed to spank a child on numerous occasions; and an alleged immoral act of one of the pupils was discussed with members of the community.

The trial judge did not make any finding of fact concerning the specific charges and did not find any facts which reflected on the teaching ability of appellant. Rather he found that the School Board had cause for dismissal in that:

"That plaintiff was, at the time of the Board's decision to dismiss her, and continues to be a *center of controversy* in defendant school district. That a substantial portion of the school population of defendant school district may be withdrawn as a result of this controversy if plaintiff continues to teach.

"That plaintiff's discharge was for 'good cause' within the meaning of our Teacher's Tenure Law, *in that* plaintiff's dismissal was justified and/or necessary in conjunction with the defendant School Board's task of building and maintaining an effecient [sic] school, and that Plaintiff's continued employment would be a detriment and hinderance [sic] to this task in view of the sentiment of the community." (Emphases supplied.)

The evidence discloses that the plaintiff became the focus of a community squabble. This arose out of the several incidents which are not sufficient to justify

the discharge of a continuing teacher and in which the community apparently chose sides, some for and some against the teacher. The critical question in this appeal is whether being the "center of controversy" constitutes "good cause" under the Teacher Tenure Act, A.R.S. Title 15, Ch. 2, Art. 3. We hold that it does not.

The size of the school and the community make an early case from the State of Vermont, reflecting substantially similar resources, more persuasive than cases where larger schools or school districts are involved. In Paul v. School District No. 2, 28 Vt. 575, the teacher involved had been charged with being cross, crusty and severe, excessive punishment and coarse language. The court said, at page 581:

"We are unable to see how this clamor could justify the defendants, by their committee, in absolutely removing the plaintiff from his school, unless upon showing that the complaints were well founded; or how he is responsible for the complaints, unless well founded. The very highest order of administrative talent in schools, and every where, is pretty sure to go along quietly. But every one does not possess the gift to govern a school acceptably, in all times and all places, and under all circumstances, for there is no government more trying, under an unfavorable complication of influences. That of administering a great empire is scarcely more trying, either to patience or skill. And it is not reasonable to require this rare combination of administrative ability, in every man, who undertakes to teach a district school, for less wages, it may be, and often is, than he would command in the most ordinary agricultural or mechanical employments."

And again at page 582:

"This general dissatisfaction with a teacher, or any one called to exercise authority, is certainly of great importance to be considered, in employing one a second time, but it seems to us no sufficient ground for removal. The considerations which should operate in the selection of a teacher, or in removal from that office, are certainly very difficult. One is a question of discretion and expediency, merely; and the other, one of mere right. A man has no right to expect, and, I think, ought not to desire to continue in such a place, against the wishes of any considerable number of those whom he is called to control, beyond the time of his actual contract, even if he could secure a renewal of it. But upon the question of yielding to mere clamor, and actually resigning his post, men are so constituted that they will act differently, and it is not always useful to give too much countenance to the fault-find-

ing spirit. And, at all events, the plaintiff had, in our judgment, by his contract, and the approval of the town superintendent as to his qualifications, acquired the right to insist upon performing his contract, unless he were shown to be, in fact, incompetent or unfaithful; and, if he was removed upon any other ground, he was entitled to damages, according to the circumstances of the removal."

We adopt the views of the Vermont court in the above case as controlling the decision here. We hold that the contract of a continuing teacher may not be terminated because she becomes the center of a controversy not of her seeking.

In Anthony v. Phoenix Union High School, 55 Ariz. 265, 100 P.2d 988, it was held that a school teacher may become the center of controversy through her fault and thereby impair the efficiency of the school. But we note in the instant case that the teacher was not at fault in precipitating herself into a controversy of which she became the center and we therefore do not have the necessary coupling of the deterioration of school efficiency and the teacher as the precipitating cause of that deterioration. Since one of the necessary factors is missing, we cannot countenance the dismissal of the teacher.

The School Board argues that even though the contract may not be terminated appellant has not made proper efforts to mitigate damages. It points to the fact that she was offered a teaching job in Page, Arizona, which she did not take. Her reasons were that she was supplied with a house at the Maine School District which would not have been the case at Page. Rather than move to Page, she moved to the family home in Mesa where she would not have to pay rent. There she did substitute teaching. Moreover, the Page school, being on a normal school year, that is from September through May, could use her services only from March through May. Thus she would be out her salary for the summer months "with no reason to believe her job in Page" would continue in September. At Page, appellant would be a probationary teacher subject to dismissal at will. A.R.S. § 15–251.

The judgment of the lower court is reversed with direction to enter judgment that appellant be reinstated as a teacher in the Maine Consolidated School District and for damages from the date of discharge to the time of reinstatement.

UDALL, C. J., LOCKWOOD, V. C. J., and BERNSTEIN and JENNINGS, JJ., concur.