**William HARTMAN, Appellant,**

v.

**MERGED AREA VI COMMUNITY COLLEGE, Appellee.**

No. 2–60731.

Supreme Court of Iowa.

Oct. 18, 1978.

---

John L. Butler and R. Kurt Swaim, Eldora, for appellant.

Michael J. Moon and Harry Druker of Cartwright, Druker & Ryden, Marshalltown, for appellee.

Considered by REES, P. J., and McCORMICK, ALLBEE, McGIVERIN and LARSON, JJ.

ALLBEE, Justice.

This appeal requires that we determine the meaning of the phrase "any good cause" found in § 279.24, The Code 1973.[1] The question is whether declining enrollment and the deterioration of a school district's financial position are "good cause" for the dismissal of a teacher under § 279.24.[2]

The facts are stipulated. Plaintiff, William Hartman, was employed full time by the defendant community college as a teacher during the 1972–73 school year. Due to the current and projected declining enrollment and an increasingly difficult financial position, defendant's board of directors determined that the size of the staff should be reduced. Plaintiff was one of those who was to be terminated. The board's original plan was to accomplish the cut-back through use of the procedure es-

---

1. **279.24 Discharge of teacher.** The board may, by a majority vote, discharge any teacher for incompetency, inattention to duty, partiality, or any good cause, after a full and fair investigation made at a meeting of the board held for that purpose, at which the teacher shall be permitted to be present and make defense, allowing him a reasonable time therefor.

2. All statutory references are to the Code of 1973 unless otherwise indicated.

tablished by § 279.13. That section provides a method by which a teacher's contract, which ordinarily renews automatically at the end of the school year for the next school year, may be terminated by either or both parties to the contract.[3] The blizzard of April 1973 caused defendant's administrative offices to be closed at a critical time, however, and defendant failed to give timely notice under § 279.13. Acting on the advice of counsel, the board elected to discharge Hartman under the provisions of § 279.24, which it regarded as an alternative to § 279.13. Plaintiff, after his discharge, then brought this action in the district court to contest the board's application and construction of § 279.24. The district court found itself in agreement with the board and dismissed the petition.

The parties are in agreement that the principal issue is as we have stated it. They disagree substantially, however, on the method by which we should resolve the question. Plaintiff would have us hold that an *end of the year* termination must be accomplished under § 279.13, while § 279.24 applies only to *immediate* discharges (plaintiff's emphasis). In the alternative, he contends that § 279.24 is effective only when the cause for dismissal is personal to the teacher. In support of his second contention, he cites the statute's history and the construction doctrine of ejusdem generis. We need deal only with plaintiff's second proposition.

Defendant counters by arguing that "good cause" must be read expansively to include any reason which the board puts forth in good faith. In support, it cites the language and history of the statute and cases from other states construing similar provisions.

In our resolution of the issue we will first take up the statutory history of § 279.24. We will then consider the applicability of the construction doctrine of ejusdem generis. In that task we will make reference to the cases of sister states which deal with similar problems. Finally, we will discuss the effect of this particular section in light of the surrounding statutory framework.

## I. History of the Statute.

Because each party claims that the history of the statute favors the construction which it presses, we begin our analysis with that subject. The predecessor to § 279.24 was enacted in 1862, as chapter 172, § 27 of the Acts and Resolutions of the Ninth General Assembly.[4] In that act, the critical language was "or for any other sufficient cause. . . ." Defendant points out the subsequent deletion of the word "other" in the evolution of the phrase which eventually became "any good cause." It argues that "other" might formerly have acted as a limitation on the word "any," but that its deletion indicates an intention to read the present phrase broadly by giving an open-ended construction to the word "any." *See, e. g., Day v. Mill Owners' Mutual Fire Ins. Co.,* 70 Iowa 710, 713, 29 N.W. 443, 445 (1886).

The statutory history, however, lends no support for such a reading. The deletion of

**3. 279.13 Contracts with teachers—automatic continuation—exchange of teachers.**

. . . On or before April 15, of each year, the teacher may file his written resignation with the secretary of the board of directors, or the board may by a majority vote of the elected membership of the board, cause said contract to be terminated by written notification of termination, by a certified letter mailed to the teacher not later than the tenth day of April;
. . . . . .

**4.** Sec. 27. [The Board of Directors] shall visit the schools in their district, and aid the teachers in establishing and enforcing rules for the government of the schools; and see that they keep a correct list of the pupils, embracing the periods of time during which they attended school, the branches taught, and such other matters as may be required by the County Superintendent. In case a teacher employed in any of the schools of the district township is found to be incompetent, or is guilty of partiality or dereliction, in the discharge of his duties, or for any other sufficient cause shown, the Board of directors, may, after a full and fair investigation of the facts of the case, at a meeting convened for the purpose, at which the teacher shall be permitted to be present and make his defense, expel him from school, and direct the sub-director to discharge him.

"other" occurred in 1897. *Compare* § 1734, The Code 1873, *with* § 2782, The Code 1897. The enactment of the Code of 1897 followed extensive study of the Code of 1873, and the promulgation of The Proposed Revision of the Code of Iowa in 1895 by the Code Commission. *See* Loth, An Outline of Iowa Codes, Compilations and Revisions, 3 Iowa Code Ann. VII, XIV–XVI (West 1967). The basic language which is now § 279.24 was found in Title XIII, chapter 14, § 19(7) of the proposed revision. Accompanying the proposed revision was the Report of the Code Commission. That report, at page 80, states that chapter 14 was "rearranged and largely rewritten for the purposes of methodical arrangement and concise statement. . . ." A discussion of the changes incorporated into § 19 occurs at page 81, but noticeably absent is any mention of an intent for § 19(7) to effect any change in prior law. *See also* Report of the Code Commission at 3–4 ("It must be distinctly understood that a change of language does not necessarily indicate any intention to change the meaning of the law. The Commission is authorized to rewrite the sections of the Code and statutes for the purpose of improving the expression of the law and it has faithfully done so. . . .").

The significance of this history is this: we should attach little importance to deletion of the "other." Further, we are better assured that the cases from other states which construe statutes containing that word are of some aid to us.

## II.  Construction of the Statute.

■  A.  This court resorts to rules of construction only when the terms of a statute are ambiguous. *Heins v. City of Cedar Rapids,* 231 N.W.2d 16, 18 (Iowa 1975). The intent of the legislature is the polestar. *Iowa Nat'l Ind. Loan Co. v. Iowa State Dep't of Rev.,* 224 N.W.2d 437, 439 (Iowa 1974); rule 14(f)(13), Rules of Appellate Procedure. In order for the rule of ejusdem generis to apply, a general provision in a statute must be preceded by specific words which all relate to a single class, character or nature. *Federated Mut. Imp.*

& *Hardware Ins. Co. v. Dunkelberger,* 172 N.W.2d 137, 140–41 (Iowa 1969).

■  The terms of the statute under consideration here are such that reasonable minds might disagree or be uncertain as to their meaning. *Cf. New Mexico State Bd. of Ed. v. Stoudt,* 91 N.M. 183, 571 P.2d 1186, 1189 (1977) ("The words 'for any other good and just cause' have no reasonably defined meaning in the law."). It is therefore appropriate for this court to engage in statutory construction. *Janson v. Fulton,* 162 N.W.2d 438, 443 (Iowa 1968). And the rule of ejusdem generis is an appropriate device to engage in that task, because the preceding specific words "incompetency, inattention to duty, partiality" all relate to personal flaws on the teacher's part.

The board's arguments against application of ejusdem generis on the basis of the statutory language and the benefits that the statute is intended to provide are not persuasive. The statutory language argument contends that the limiting word "other" is not included in the general phrase, while the word "any", which is included, should be read to indicate a broad expanse of possible good causes. We are not so impressed by the absence of the word "other," in light of the history of the statute as set out in division I. Nor does the use of "any" in the general phrase prevent application of ejusdem generis. The word simply emphasizes generality where generality is required for the rule to be used. Numerous cases apply the rule when the general phrase includes "any." *See, e. g., In re Bush Terminal Co.,* 93 F.2d 659, 660 (2d Cir. 1938) (dicta); *Swift & Co. v. Columbia Ry., etc.,* 17 F.2d 46, 47 (4th Cir. 1927) (applying rule to phrase in contract); *Powell v. Allan,* 70 Cal.App. 663, 675, 234 P. 339, 344 (1925); *Dowd v. Sullivan,* 217 Ind. 196, 201, 27 N.E.2d 82, 84 (1940) (application to criminal statute); *State v. Wade,* 267 Mo. 249, 257–59, 183 S.W. 598, 600 (1916) (application to criminal gambling statute; particular device found to be within genre of specifics); *but see State v. Miller,* 90 Kan. 230, 233, 133 P. 878, 879 (1913) (refused to apply rule, saying "any instrument or means whatsoev-

er" is all inclusive and not ambiguous); *Hardwick Farmers' Elev. Co. v. Chicago, R. I. & P. Ry. Co.,* 110 Minn. 25, 33, 124 N.W. 819, 821 (1910).

Finally, we note that this proposition finds support in the law of this state. In *Hubbell v. Higgins,* 148 Iowa 36, 45, 126 N.W. 914, 917–18 (1910) the phrase "any other source whatsoever" in a hotel inspection statute was held to have reference to a source of like kind with the specifics which preceded it: "sewer, drain and privy." The language of § 279.24 does not prevent the application of the rule of ejusdem generis.

The board also argues that use of ejusdem generis to construe § 279.24 is improper in light of the rule that any statute intended for public benefit must be construed in favor of the public, and cites *Bankers Life and Casualty Co. v. Alexander,* 242 Iowa 364, 373–74, 45 N.W.2d 258, 264 (1951). There is, of course, a serious question whether the employment security and certainty which chapter 279 provides for teachers is not at least as beneficial to the public as the corresponding certainty of adequate faculty for the school system.

■ Beyond that, however, is the fact that the board had the power to deal with the economic problem existing here by terminating Hartman's contract under § 279.-13. Indeed, that was the method which the board originally adopted to sever its relation with plaintiff. We have previously considered § 279.24 in conjunction with § 279.13. *See, e. g., Ramey v. Des Moines Area Comm. College,* 216 N.W.2d 345, 348 (Iowa 1974); *Miner v. Lovilia Ind. School Dist.,* 212 Iowa 973, 979, 234 N.W. 817, 819 (1931). We once again confirm that each must be read in light of the other. *Cf. Goergen v. State Tax Comm'n,* 165 N.W.2d 782, 786 (Iowa 1969) ("legislative *intent* is to be gleaned from the whole statute or statutes relating to the matter . . . ."). Therefore, the rule which the board contends for has no application. A broad reading of § 279.24 is not appropriate because the power which the board requires is given by § 279.13.

■ Instead, we apply the ejusdem generis rule and hold that "any good cause" in § 279.24 takes meaning from the specifics which precede it and refers only to personal faults of the teacher. This is consistent with *Schultz v. Consolidated Ind. School Dist. of Treynor,* 200 Iowa 293, 204 N.W. 281 (1925). In that case, the teacher's contract was rescinded for reasons "in no way connected with [her] service and ability as a teacher." *Id.* at 295, 204 N.W. at 282. The court held that she was not dismissed under § 2782, The Code 1897 (the predecessor to § 279.24), which the court appeared to conceive of as going only to personal fault. *Id.* at 299, 204 N.W. at 284. Therefore, the requirement of an appeal of her dismissal to the county superintendent before bringing an action for damages did not apply. *See also Curttright v. Ind. School Dist.,* 111 Iowa 20, 24, 82 N.W. 444, 445 (1900).

B. While our construction of the "good cause" language of § 279.24 finds support in the case law of other states, that support is not unanimous, as the board has demonstrated. The courts of several states have construed somewhat similar clauses to give the school board almost unlimited discretion under the "good cause" provision. The leading case is *Rinaldo v. Dreyer,* 294 Mass. 167, 1 N.E.2d 37 (1936). There it was held that the marriage of a female teacher, contrary to a board rule, was good cause. The case allowed dismissal on "any ground which is put forward by the committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system." 294 Mass. at 169, 1 N.E.2d at 38; *Davis v. School Comm.,* 307 Mass. 354, 362, 30 N.E.2d 401, 406 (1940). That rule still flourishes in Massachusetts today. *See Nutter v. School Comm.,* 359 N.E.2d 962 (Mass.App.1977).

Indiana initially adopted the narrow view of "good cause" to which we now adhere. *School City of Elwood v. State ex rel. Griffin,* 203 Ind. 626, 180 N.E. 471, 473, 81 A.L.R. 1027 (1932); *School City of Evansville v. Culber,* 94 Ind.App. 692, 182 N.E. 270 (1932). That position was reversed, however, in *McQuaid v. State,* 211 Ind. 595,

606, 6 N.E.2d 547, 552, 118 A.L.R. 1079, 1084 (1937) which followed the Massachusetts lead in *Rinaldo v. Dreyer.* The Michigan Supreme Court then relied upon *McQuaid* and *Rinaldo* to hold that a public librarian who married in violation of a rule could be dismissed under a civil service statute requiring good cause. *Nephew v. Wills,* 298 Mich. 187, 198, 298 N.W. 376, 377 (1941). *See also Williams v. School Dist.,* 4 Ariz. App. 5, 6, 417 P.2d 376, 377 (1966); *McLain v. Board of Education,* 36 Ill.App.2d 143, 147, 183 N.E.2d 7, 9 (1962); *Greco v. Roper,* 145 Ohio St. 243, 61 N.E.2d 307 (1945). None of these cases are compelling, because none contain any consideration or mention of a statutory alternative to the "good cause" statute such as is available to Iowa school boards in § 279.13. Each case does, however, recognize the need to give meaning to the entire statute. In the case before us, that would seem to demand that we consider the availability of § 279.13 and that statute's likely purpose. We take that point up below.

But there is, as we have said, case law which supports our viewpoint as well. During the period of time that *Rinaldo v. Dreyer* was gaining support, other states were taking a contrary view and applying the rule of ejusdem generis to limit the good cause dismissal provisions. In *School Dist. of Wildwood v. State Bd. of Ed.,* 116 N.J.L. 572, 185 A. 664 (1936) the court held that "other just cause" must be read in conjunction with the provisions immediately preceding and implied a dereliction by the teacher. Wisconsin adopted the same view, on the same rationale, in *State ex rel. Schmidtkunz v. Webb,* 230 Wis. 390, 284 N.W. 6 (1939). Other more recent cases which equate good cause with a need for a showing of fault on the part of the teacher include *Kersey v. Maine Consol. School Dist.,* 96 Ariz. 266, 268–69, 394 P.2d 201, 202 (1964) (en banc), *citing Paul v. School District,* 28 Vt. 575, 582 (1856); *Madison County Bd. v. Miles,* 252 Miss. 711, 173 So.2d 425 (1965); *Powell v. Board of Trustees,* 550 P.2d 1112, 1118–19 (Wyo.1976) (The statute being construed is set out in the dissent of Raper, J., at 1127.); *cf. Board of School Trustees v. Rathbun,* 556 P.2d 548 (Nev. 1976) (An article prepared for a university class did not adversely affect teacher's ability to perform his duties.); *Hale v. Board of Ed.,* 13 Ohio St.2d 92, 98–99, 234 N.E.2d 583, 587 (1968) (When used with "gross inefficiency or immorality" and " 'willful and persistent violations' of board regulations," "other good and just cause" must refer to "fairly serious matter[s]." Opinion implies factors must be personal to teacher.); *Barnes v. Seattle School Dist.,* 88 Wash.2d 483, 487, 563 P.2d 199, 201 (1977) (Statute contained no specific enumerations of cause for dismissal; nevertheless "sufficient cause" in revocation statute refers to "conduct of a teacher adversely affecting performance.").

Three authorities which the board cites deserve special comment. The first is *Funston v. District School Board,* 130 Or. 82, 278 P. 1075, 63 A.L.R. 1410 (1929). That case is cited for the proposition that school boards have the power to dismiss unneeded personnel, even in the absence of statutory authority. Actually *Funston* is consistent with the result which we reach. It holds that the Oregon statute with language similar to § 279.24 allows dismissal only for causes personal to the teacher. It goes on to find that school boards have inherent power to dismiss unneeded teachers. *Funston,* however, makes no mention of any Oregon statutory analogue to § 279.13. There is no need, in Iowa, to find such an inherent power, because it is granted in statutory form by § 279.13. That statute places procedural requirements on the power which, all parties agree, were not complied with here.

The board contends that the existence of this inherent power is also supported by *Ehret v. School District of Borough of Kulpmont,* 333 Pa. 518, 5 A.2d 188 (1939). That case depends upon the construction of a Pennsylvania statute requiring employment of "necessary" teachers. The court held that the dismissal for cause section of the school law would be in conflict with the necessary teachers requirement if it demanded continued employment of useless

teachers. Once again, no analogue to § 279.13 is mentioned. Further, the board has made no argument that the power to dismiss unneeded teachers is impliedly granted by another statute, and we have discovered no basis for such an argument.

Finally, the board has directed our attention to an annotation on the subject of a school board's right to dismiss a public school teacher on the ground that the teacher's services are no longer needed, found at 100 A.L.R.2d 1141. We caution that the issue we decide is not whether Iowa school boards have the power to dismiss teachers who would be mere surplusage. The issue we deal with is much more narrow: does a dismissal on the basis of lack of need of a teacher's services fit within the definition of the § 279.24 "any good cause" provision? The authorities which we have already set out are much more useful and persuasive on that issue of statutory construction.

### III. The purpose of the statute in light of the statutory scheme.

Aside from our application of ejusdem generis to the statute and the support which that analysis finds in the law of other states, we are also convinced that the statutory scheme into which § 279.24 fits commands the result we reach: that legislative intent was for "good cause" in § 279.24 to refer only to factors personal to the teacher. *See Chicago & N. W. Ry. Co. v. City of Osage,* Iowa, 176 N.W.2d 788, 792 (1970) (In ascertaining the legislative intent, statutes relating to the same or closely related subject matter must be considered in light of common purpose and intent.).

The board, however, argues that an examination of the statutory scheme bolsters its position that the use of § 279.24 is appropriate here. It points to this sentence in § 279.13: "The foregoing provisions for termination shall not affect the power of the board of directors to discharge a teacher for cause under the provisions of Section 279.-24." But the effect of this language is quite the contrary. It emphasizes the difference between termination without cause under § 279.13 and a discharge for cause

under § 279.24. The "for cause" is a reference to the "good cause" required by § 279.24. Included, as it was, in the same amendment which added the automatic renewal of contract provisions, Acts 51 G.A., ch. 129, this language simply assures that § 279.24 is still available in the appropriate circumstances.

The need for a school board to dismiss a teacher due to declining enrollment or economic necessity is one which can be predicted, as it was in fact predicted in this case. Declining enrollment, and the associated loss of funds, seems likely to be a factor which would be measured on a school year by school year basis, rather than a day to day or month to month basis. These are the sort of contingencies for which the termination provisions of § 279.13 appear to be well-suited. Because they are predictable, the school board should be capable of determining the size and specifications of the staff which is needed and supportable in the approaching year. It appears to us that the intent of the legislature was to give teachers the benefit of that predictability, whenever possible, so as to allow them to plan for their continued employment and welfare. That object was accomplished by inclusion of the termination provisions of § 279.13. *Cf. Gassman v. Governing Board,* 18 Cal.3d 137, 133 Cal.Rptr. 1, 554 P.2d 321 (1976) (recognizing distinction in California statutes between reasons and procedures for dismissal at end of year and during year); *Barnes v. Seattle School Dist.,* 88 Wash.2d 483, 487, 563 P.2d 199, 201 (1977). Similarly, school boards are benefitted in their planning because teachers are required by § 279.13 to timely file their resignations.

The specificity of notice and timing requirements found in § 279.13, which act to assure that a terminated teacher will have some opportunity to explore the job market for the next school year, stand in stark contrast to the total flexibility of § 279.24. That flexibility is a legislative recognition of, and reaction to, the possibility that personal fault which would disqualify a teacher can surface at any time and require an immediate remedy.

Our conclusion that "good cause" refers to factors personal to a particular teacher is based upon a search for the intent of the legislature as manifested in §§ 279.13 and 279.24 of the Code as they existed in 1973. Both sections have subsequently been substantially rewritten. *See* §§ 279.13, 279.15 and 279.27, The Code 1977. Whether "just cause" under § 279.15(2), The Code 1977, means the same thing as "just cause" under § 279.27, The Code 1977, *cf. Barnes v. Seattle School Dist., supra,* and whether "just cause" under either section can be equated with "good cause" as we have here defined it are questions which we have not considered and do not express any opinion upon.

Trial court shall enter judgment for plaintiff in accordance with the stipulation of the parties.

REVERSED.